UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle Simha, as Trustee for the next-of-kin of Noah Leopold, <br><br>　　　　Plaintiff, <br><br>vs. <br><br>Mayo Clinic, <br><br>　　　　Defendant. | Civil No.: |

**Complaint**

Plaintiff, for her complaint and cause of action against the above-named Defendant, states and alleges as follows:

1.　Michelle Simha is a citizen of the State of Florida. She is the widow of Noah Leopold, and was appointed trustee for Noah Leopold's next-of-kin by order of the Olmsted County District Court on November 28, 2023.

2.　Noah Leopold was born on October 10, 1982, and died on September 9, 2023. At the time of his death he was a citizen of the State of Florida.

3.　Defendant Mayo Clinic ("Mayo") is a Minnesota corporation with its principal place of business and registered office located in Minnesota.

4.  The amount in controversy in this wrongful death action is in excess of $75,000, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

5.  Venue in this district is proper pursuant to 28 U.S.C. § 1391.

6.  At the time of his death, Mr. Leopold was a patient at Mayo. The negligent care that forms the basis for this action was provided by employees and/or agents of Mayo who were acting in the course and scope of their employment/agency.

7.  Mayo is legally liable for any of the negligent actions or inactions of its employees and agents that contributed substantially to Mr. Leopold's death.

8.  Mr. Leopold received cardiac care from Mayo for years. In August 2023 he was admitted to Mayo to be prepared for a heart transplant.

9.  As part of preparing Mr. Leopold for his transplant, Mayo made assurances to him. Mr. Leopold was told that he had the luxury of time, and the Mayo team assured him they would not accept a substandard heart for his transplant. These assurances were extremely important to Mr. Leopold, who was well-versed in the various aspects of the transplant.

10. On August 29, 2023, Mayo notified Mr. Leopold that a "suitable donor heart" had become available. Mr. Leopold was not told what made the donor heart "suitable."

11. Mr. Leopold was told that the donor heart was coming from a donor who had "risk factors" for the development of hepatitis or HIV. He was not told what those risk factors were, and was given no other information about the underlying health of the donor or the cause of the donor's death. He was also not told anything about the location of the donor heart, the way it would be transported, or the length of time it would be in transit.

12.     Prior to his consenting to the attempted transplant, Mayo led Mr. Leopold to believe that he would receive a "good" heart, and that the heart would undergo careful inspection by the transplant team in the OR before the transplant went forward. Mr. Leopold's consent to the attempted transplant was dependent and predicated upon these representations.

13.     Employees and/or agents of Mayo procured the donor heart, inspected it, and determined it to be viable and suitable for Mr. Leopold. Employees and/or agents of Mayo then transported the donor heart to Rochester in an "Organ Care System" machine.

14.     The standard of care required Mayo to monitor the donor heart while it was in transit, and periodically reassess its viability and suitability for transplant. Upon information and belief, this was not done appropriately.

15.     Mr. Leopold's native heart had been explanted by the time the donor heart arrived in the operating room. Mayo then attempted to transplant the donor heart.

16.     The transplant went catastrophically wrong. The Mayo surgeon performing the transplant noted that the donor heart essentially "fell apart" during the attempted transplant. The transplant attempt had to be aborted, with Mr. Leopold – who was now without a functioning heart – placed on artificial support.

17.     Mr. Leopold's clinical condition worsened progressively in the subsequent days, and he passed away on September 9, 2023.

## Count I – Medical Negligence

18.      Plaintiff re-alleges all paragraphs above.

19. Defendant departed from accepted standards of medical practice in the care and treatment it provided to Noah Leopold. These departures include, but are not limited to, the failure to appropriately evaluate Mr. Leopold for a heart transplant; the failure to appropriately perform Mr. Leopold's heart transplant; and the failure to appropriately assess, monitor, and transport the potential donor heart.

20. Defendant's departures from the standard of care were a direct cause of Mr. Leopold's death.

## Count II – Negligent Nondisclosure

21. Plaintiff re-alleges all paragraphs above.

22. Defendant knew, or should have known, about the risks associated with moving forward with the attempted heart transplant on August 29.

23. Defendant knew, or should have known, that waiting to procure a different heart was a viable alternative to moving forward with the attempted heart transplant on August 29.

24. Defendant knew, or should have known, that waiting to explant Mr. Leopold's native heart was a viable alternative to moving forward with the attempted heart transplant on August 29.

25. The risks associated with moving forward with the attempted heart transplant on August 29, and the alternatives outlined above, were significant enough that Mayo should have told Mr. Leopold about them.

26. Mayo did not provide Mr. Leopold with complete and accurate information about the risks and alternatives outlined above.

27. A reasonable person in Mr. Leopold's position would not have consented to the procedure if the risks and alternatives outlined above had been appropriately disclosed.

28. Mayo's failure to appropriately disclose the risks and alternatives outlined above was a direct cause of Mr. Leopold's death.

### Count III – Medical Battery

29. Plaintiff re-alleges all paragraphs above.

30. In obtaining Mr. Leopold's consent for the attempted transplant procedure, Mayo led Mr. Leopold to believe that the donor heart it would be transplanting would be "good" and "not marginal."

31. In obtaining Mr. Leopold's consent for the attempted transplant procedure, Mayo led Mr. Leopold to believe that his heart would not be removed until the donor heart had arrived in the operating room and had been inspected by the surgeon who would be performing the transplant.

32. The attempted transplant procedure Mayo performed on Mr. Leopold was of a substantially different nature and character from that to which he consented.

33. Mayo's performance of a substantially different procedure than that to which Mr. Leopold had consented was a direct cause of Mr. Leopold's death.

### Damages

34. As a direct result of Mayo's negligence, negligent nondisclosure, and medical battery – as outlined above – Mr. Leopold experienced significant pain, suffering, disability, and emotional distress.

5

35. As a direct result of Mayo's negligence, negligent nondisclosure, and medical battery – as outlined above – Mr. Leopold and his next-of-kin incurred substantial medical expenses.

36. As a direct result of Mayo's negligence, negligent nondisclosure, and medical battery – as outlined above – Mr. Leopold's next-of-kin suffered substantial pecuniary loss. This includes, but is not limited to, loss of earnings; loss of support; counsel, guidance, and aid; and advice, comfort, assistance, companionship, and protection.

37. As a direct result of Mayo's negligence, negligent nondisclosure, and medical battery – as outlined above – Mr. Leopold's next-of-kin will in the future suffer substantial pecuniary loss. This includes, but is not limited to, loss of earning capacity; loss of support; counsel, guidance, and aid; and advice, comfort, assistance, companionship, and protection.

38. The damages outlined above have resulted in monetary losses in an amount to be proved at trial, but in excess of $75,000.

**Demand for Judgment**

WHEREFORE, Plaintiff requests a judgment against Defendant in an amount in excess of $75,000, together with costs, disbursements, interests, and such other and further relief as the Court deems just and appropriate under the circumstances.

Dated:  March 28, 2024 **CIRESI CONLIN LLP**

By:   */s/ Brandon E. Thompson*
     Brandon E. Thompson (#349173)

225 South Sixth Street
Suite 4600
Minneapolis, MN  55402
612-361-8200
bet@ciresiconlin.com

**ATTORNEYS FOR PLAINTIFF**

**Acknowledgment Required by Minn. Stat. § 549.211, Subd. 2**

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated: March 28, 2024               **CIRESI CONLIN LLP**

                                    By: */s/ Brandon E. Thompson*
                                        Brandon E. Thompson (#349173)

                                    225 South Sixth Street
                                    Suite 4600
                                    Minneapolis, MN  55402
                                    612-361-8200
                                    bet@ciresiconlin.com

                                    **ATTORNEYS FOR PLAINTIFF**