## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle Simha, as Trustee for the Next-of-Kin of Noah Leopold,<br><br>          Plaintiff,<br><br>vs.<br><br>Mayo Clinic,<br><br>          Defendant. | Civil File No. 24-CV-01097-DTS<br><br><br>**MAYO CLINIC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS** |

Mayo Clinic ("Mayo") respectfully requests that the Court impose sanctions to remedy Plaintiff's flagrant violation of the rules of discovery to gain tactical advantage in this litigation.

This medical malpractice case arises out of medical care and treatment Noah Leopold received at Mayo in August and September of 2023. In the days leading up to Mr. Leopold's heart transplant surgery, a member of his family surreptitiously recorded a video of a conversation with one of Mr. Leopold's Mayo physicians, without the physician's knowledge or consent (the "Recording"). Plaintiff quoted statements from the Recording in her Complaint and expressly relied on them as factual support for her claims, but did not disclose the existence of the Recording. Plaintiff served requests for admissions on Mayo demanding that Mayo admit having made certain statements on the Recording, but did not disclose that those statements were already on video. And when Mayo served document requests and interrogatories expressly seeking disclosure of witness statements, videos and recordings, and factual grounds for

Plaintiff's claims and allegations regarding statements by Mayo personnel, Plaintiff (1) denied awareness of any statements even though the Recording is a statement as defined by the Federal Rules; (2) failed to disclose the existence of the Recording; and (3) refused to answer interrogatories seeking the factual basis for her allegations, based on a facially invalid objection.

Plaintiff pursued this scheme of evasion for the obvious purpose of concealing the existence of the Recording until she could surprise Mayo and the witness with it during his deposition. And that is exactly what Plaintiff did. After questioning the witness about his alleged prior statements, Plaintiff's counsel revealed the Recording for the first time in the middle of the deposition, then proceeded to cross-examine the witness about it. Plaintiff subsequently attempted to justify her concealment of the Recording on the spurious ground that it was intended solely for impeachment purposes. As explained below, that contention is patently false, as Plaintiff quoted the Recording in her Complaint and relies on statements in it as substantive support for her claims. And even accepting Plaintiff's premise purely for the sake of argument, her legal position is without merit. The plain language of Rule 26 and relevant case law overwhelmingly confirm that a party cannot conceal or delay disclosure of responsive evidence through the artifice of unilaterally declaring it to be solely for impeachment. If that were the case, the rules of discovery may as well be repealed.

The law is not so absurd. Plaintiff was obligated by the rules and by Mayo's discovery requests to disclose the Recording before depositions. Plaintiff succeeded in concealing the Recording only by systematically violating those

obligations. The resulting testimony was tainted by these violations and the unfair surprise that was, of course, precisely the goal of Plaintiff's conduct.

Discovery violations of this nature demand a remedy. Here, a fair and appropriate remedy is to exclude the ill-gotten deposition testimony from any further use in this case, and to impose monetary sanctions in an amount the Court deems appropriate, both to compensate for undue burden and expense Plaintiff's violations imposed on Mayo and to deter similar gamesmanship in the future.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Noah Leopold's Care and Treatment at Mayo Clinic

Noah Leopold was in end-stage heart failure when he was admitted to Mayo Clinic in August 2023 to undergo heart transplantation surgery. Leopold's heart failure resulted from use of Adriamycin, a chemotherapy drug that had been administered to Leopold (by a non-Mayo facility) to treat cancer when he was approximately seven years old. Leopold had suffered significant heart dysfunction for virtually his entire adult life, and had been followed by physicians on Mayo's cardiology and heart transplant teams since 2014. He visited Mayo annually for evaluation and consultation.

By early 2023, Leopold's heart failure had progressed to the point at which he needed to proceed with transplantation. After further evaluation, he was admitted to Mayo on August 16, 2023 for right heart catheterization and placement of an intra-aortic balloon pump, in preparation for the transplant surgery. That same day, Leopold and members of his family met with Mayo physician Bradley Ternus, an intensive care specialist who would care for

Leopold in the cardiac intensive care unit while he awaited an offer of a donor heart. Unbeknownst to Dr. Ternus, Leopold's mother recorded the meeting, evidently on a personal phone. *See* Declaration of Andrew Brantingham ("Brantingham Decl.) Ex. A; *id.* Ex. B at 6 ("I [Karen Leopold] took a video of that conversation [with Dr. Ternus] …").

A suitable donor heart was offered on August 29, 2023, and Leopold consented to proceed with the operation after further discussion with a Mayo transplant cardiologist. A Mayo team procured the donor heart and transported it to Mayo, where the surgical team transplanted it into Leopold. Then, and for reasons unknown, the donor heart began to bleed uncontrollably. The surgical team took extensive actions to control the bleeding, but was unsuccessful despite best efforts. The surgical team was left with no option but to explant the donor heart and stabilize Leopold on mechanical cardiovascular support while he awaited an offer of another donor heart.

A second donor heart was procured and successfully transplanted on September 7, 2023. Unfortunately, on the morning of September 8, Leopold was found to have suffered extensive intracranial hemorrhage and diffuse cerebral edema; tragically, he had experienced an unforeseeable and unsurvivable brain bleed. Support was withdrawn, and Leopold passed on September 9, 2023. Brantingham Decl. Ex. C.

## II.   Plaintiff's Complaint

Plaintiff commenced this lawsuit against Mayo on March 28, 2024, pleading claims for medical negligence (Count I), negligent nondisclosure (i.e., lack of informed consent) (Count II), and medical battery (Count III). Compl.

(ECF 1) at 3-5. Plaintiff alleged in the Complaint that various unidentified Mayo personnel made specific statements and "assurances" to Leopold in connection with preparation for his transplant surgery, *id.* ¶ 9, and the Complaint expressly quotes portions of the Recording as examples of some of these "assurances":

> 9. As part of preparing Mr. Leopold for his transplant, Mayo made assurances to him. Mr. Leopold was told that ***he had the luxury of time***, and the Mayo team assured him they would not accept a substandard heart for his transplant. These assurances were extremely important to Mr. Leopold, who was well-versed in the various aspects of the transplant.
> . . .
>
> 12. Prior to his consenting to the attempted transplant, Mayo led Mr. Leopold to believe that ***he would receive a "good" heart***, and that the heart would undergo careful inspection by the transplant team in the OR before the transplant went forward. Mr. Leopold's consent to the attempted transplant was dependent and predicated upon these representations.
> . . .
>
> 30. In obtaining Mr. Leopold's consent for the attempted transplant procedure, Mayo led Mr. Leopold to believe that the ***donor heart it would be transplanting would be "good" and "not marginal."***

*Id.* ¶¶ 9, 12, 30 (emphases added); Brantingham Ex. A at 5:17 – 6:09 (Dr. Ternus stating "[t]hey're not going to take a marginal heart" and "we have the luxury of time in waiting for a good one"); *id.* Ex. B at 26 ("Dr. Bradley Ternus specifically told Noah he had 'the luxury of time,' that Mayo would not accept a 'marginal' heart for him, that Mayo would not accept a heart from a donor who had had a drug overdose, and that Mayo would wait for the 'perfect' heart."). Plaintiff expressly incorporated some of these quotes as factual support for her medical battery claim (Count III). Compl. ¶ 30. But nowhere in the Complaint did

Plaintiff disclose the existence of the Recording or the source of the quoted statements, nor did she identify any individual Mayo physician or representative who allegedly made any specific statement or "assurance" to Leopold.

## III.    Plaintiff's Withholding of the Recording from Discovery

The parties engaged in written discovery prior to commencement of depositions. Plaintiff did not disclose the Recording in any of her disclosures or discovery responses.

Plaintiff's initial disclosures stated that "Medical personnel at or affiliated with Mayo Clinic as identified in the medical records" had "discoverable information" related to Plaintiff's allegations, but failed to identify any specific Mayo physicians or employees. Brantingham Decl. Ex. D at 2. Plaintiff also listed various documents that "may be used to support" Plaintiff's claims, but did not disclose the existence of the Recording. *Id.* at 3-4.

Plaintiff served Mayo with Requests for Admissions on June 3, 2024. *Id.* Ex. E. In those requests, Plaintiff demanded that Mayo admit having made certain statements that—as Plaintiff knew but Mayo did not—were actually memorialized on the Recording. Plaintiff demanded that Mayo admit having told Leopold that "'he had the luxury of time' in waiting for a 'good heart'" (*id.* ¶ 3), that Mayo would "not accept a 'marginal heart'" (*id.* ¶ 4), and that "the heart he would receive would be a 'good heart'" (*id.* ¶ 11). *See also* Brantingham Decl. Ex. A at 5:17 – 6:09. Mayo objected to the Requests in part because they did not identify the Mayo personnel who allegedly made the statements (leaving Mayo without any reasonable way to investigate the source of the alleged statements), and denied the Requests "as phrased." Brantingham Decl. Ex. F.

Plaintiff did not disclose the Recording after receiving Mayo's answers to her requests for admissions.

Mayo served its first set of discovery requests on Plaintiff on July 2, 2024. Brantingham Decl. Ex. G & H. The Recording was responsive to several of Mayo's document requests:

- **Document Request No. 3** sought "[a]ll documents that in any way relate to the allegations and claims made in [P]laintiff's Complaint," including "any . . . audio or video recordings."

- **Document Request No. 4** sought "[a]ll documents, other than medical records in the possession of third parties, that refer or relate to any medical care or treatment received by Noah Leopold."

- **Document Request No. 6** sought "[a]ll . . . communications that you have received from . . . Mayo or any employee, representative, or agent of Mayo."

- **Document Request No. 9** sought "[a]ll documents containing, referring to, or constituting any statement taken from any party or nonparty pertaining to the incident. For purposes of this Request, 'statement' has the meaning set forth in Fed. R. Civ. P. 26(b)(3)," *i.e.*, any "contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim [a] person's oral statement." Fed. R. Civ. P. 26(b)(3).

Brantingham Decl. Ex. G at 3-4.

Mayo also served several interrogatories that called for disclosure of the Recording, including four interrogatories expressly requesting explanation of the factual basis for Plaintiff's allegations in the Complaint purporting to quote or paraphrase statements made by Mayo personnel:

- **Interrogatory No. 7** asked Plaintiff to "[d]escribe all discussions, conversations, or statements, written or oral, made by any employee or

representative of Mayo, concerning Noah Leopold's medical condition, care, services, testing, [or] treatment."

- **Interrogatory No. 10** asked Plaintiff to "[i]dentify any statements taken from parties or non-parties pertaining to this action," again defining "statement" by reference to Fed. R. Civ. P. 26(b)(3).

- **Interrogatories Nos. 13 and 14** respectively asked Plaintiff to "[d]escribe in detail the factual basis" for the specific allegations in paragraphs 9 and 12 of Plaintiff's Complaint, which recited statements allegedly made by "Mayo." These interrogatories expressly requested that Plaintiff "[i]dentify the person or persons who made these alleged statements; describe in detail the statements made, including the time, place, and form of communication; and identify all persons who were present or to whom these statements were communicated."

- **Interrogatories Nos. 15 and 16** respectively asked Plaintiff to "[d]escribe in detail the factual basis" for her negligent nondisclosure and medical battery claims, with specific reference to certain statements allegedly made by Mayo.

Brantingham Decl. Ex. H at 5-8.

Plaintiff did not produce the Recording in response to any of Mayo's document requests, and expressly denied being aware of any "statements" as defined by Fed. R. Civ. P. 26(b)(3). Brantingham Decl. Ex. I at 21.

Plaintiff gave no substantive response to Mayo's Interrogatory No. 7 (calling for discussions and communications with Mayo personnel), objecting that the interrogatory "by its very nature, requests information that is equally under the control of Defendant." *Id.* at 20. In response to Interrogatory No. 10, Plaintiff stated that she was "aware of no 'statements' as that term has been defined." *Id.* at 21. And Plaintiff simply refused to answer Interrogatories Nos. 13-16, claiming that Mayo had "exceed[ed] the maximum number of Interrogatories allowed under the Court's scheduling order"—25 interrogatories

8

per side—even though Mayo had only tendered 16 Interrogatories. *Id.* at 22-23. Plaintiff did not identify the Recording in any of her interrogatory responses.

Plaintiff originally noticed depositions of 10 Mayo witnesses in May 2024, to be taken in June of 2024. Brantingham Decl. Ex. J. Those depositions were later rescheduled to August 12-14, 2024. In anticipation of the depositions, counsel for Mayo emailed Plaintiff's counsel on August 8, taking issue with a number of Plaintiff's evasive and incomplete discovery responses, and requesting—as a prerequisite to proceeding with the depositions—confirmation that Plaintiff had "produced, and [was] not withholding on objection or otherwise, any and all documents, recordings, videos, or any other evidence relevant to the allegations in Plaintiff's complaint, specifically including, but not limited to, the allegations addressed in Mayo's interrogatories 13, 14, 15, and 16"—the interrogatories addressing Plaintiff's allegations about statements by Mayo personnel. Brantingham Decl. Ex. K. Plaintiff's counsel responded the same day, confirming that Plaintiff had "produced all information responsive to [Mayo's] RFP 3 and 4 (not to mention the rest of your discovery requests) that is discoverable and not privileged." *Id.* In reliance on that confirmation, Mayo agreed to move forward with depositions scheduled to begin August 12, 2024.

Mayo's counsel wrote to Plaintiff's counsel  again on August 9, 2024, outlining various deficiencies in Plaintiff's discovery responses and document production. Brantingham Decl. Ex. L. Mayo explained that Plaintiff's objections and refusal to answer Interrogatories 13-16 were "inconsistent with Rule 33 and the attendant law," demanding that Plaintiff withdraw the objections and provide complete answers by August 16, 2024. *Id.* Mayo did not renew its request

that Plaintiff produce any witness statements, because Plaintiff had affirmatively stated in her discovery responses that no "statements" existed, and Mayo had no reason to disbelieve this representation. *See id*. Ex. I at 21.

Plaintiff's counsel responded on August 10, 2024, committing to "reviewing" the letter so that the parties could "work through most if not all" of Plaintiff's deficient discovery responses. Brantingham Decl. Ex. M. Plaintiff's counsel did not mention the Recording despite depositions beginning in a few days.

## IV. Plaintiff Reveals the Recording for the First Time During Dr. Ternus's Deposition

On August 12, 2024, Plaintiff deposed Dr. Bradley Ternus, a cardiologist in the cardiac intensive care unit ("ICU") at Mayo. Dr. Ternus was the last deposition taken on the first day of three consecutive days of depositions of Mayo witnesses. Dr. Ternus's limited role had been to care for Leopold in the cardiac ICU while Leopold prepared for transplantation and awaited a donor heart. Brantingham Decl. Ex. N at 9:22-10:6, 11:24-12:2. Dr. Ternus was not involved in the decision to accept the donor heart offered to Leopold, procurement of the heart, monitoring the heart prior to transplantation, or the transplantation surgery. *Id.* at 54:14-56:19. As noted above—and as Mayo and Dr. Ternus only came to learn in the middle of the deposition—Leopold's mother had made the Recording of a conversation with Dr. Ternus.

During Dr. Ternus' deposition, Plaintiff's counsel asked a series of questions about statements Dr. Ternus allegedly had made to Leopold and his family. *See id.* at 19:18-20:14, 21:12-18, 24:12-19. Plaintiff's counsel framed these questions as being based on statements that Leopold's family would testify Dr.

10

Ternus had made, rather than disclosing that the family had actually *recorded* Dr. Ternus making these statements. *E.g., id.* at 20:7-10. Unaware of the Recording, and lacking definitive recall of the exact details of the discussion with Leopold and his family approximately a year earlier, Dr. Ternus acknowledged that certain statements did "sound like the sort of thing [he] would have told the family," and as to others, he gave answers such as that he "[did] not recall saying that specifically." *Id.* at 19:23-20:3, 23:3-12.

Plaintiff's counsel then disclosed the Recording for the first time, playing the Recording for the witness and the record, and periodically pausing it to ask Dr. Ternus questions about certain statements in the video. *Id.* at 37:10-38:23. Responding to Mayo's objections, Plaintiff's counsel asserted that Plaintiff was justified in concealing the Recording up to that point because it was allegedly "for impeachment purposes and the rule specifically says it doesn't have to be disclosed" *Id.* at 37:15-21. Plaintiff's counsel then pressed Dr. Ternus to admit various contentions that went beyond the statements made in the Recording. *See id.* at 47:11-20, 51:10-15, 51:16-52:6, 64:16-25, 71:2-16.

Plaintiff's counsel produced a copy of the Recording to Mayo only after completing Dr. Ternus's deposition. *Id.* Ex. O. Following the deposition, at Plaintiff's request, counsel for both parties participated in a telephone conference with the Court. The Court instructed the parties to complete the remaining depositions as scheduled, but ordered Plaintiff's counsel to not refer in subsequent depositions to the Recording, Dr. Ternus's testimony concerning the Recording, or the statements made in the Recording. *Id.* Ex. P at 3:2-4:3.

In subsequent correspondence, Plaintiff's counsel maintained that Plaintiff had no obligation to produce the Recording prior to using it at deposition because of Plaintiff's counsel's putative "good-faith belief it is pure impeachment material and therefore not discoverable under black-letter law." *Id.* Ex. Q. As justification for this position, Plaintiff's counsel cited *Wegener v. Johnson*, 527 F.3d 687 (8th Cir. 2008). *Id.* Ex. O.

Plaintiff subsequently agreed to "respond to Interrogatories 13-16." *Id.* Ex. R. Plaintiff's sole justification for the change of position was it did not "[make] sense to battle over it." *Id.* On September 18, 2024, Plaintiff served supplemental interrogatory answers including over 20 pages of narrative responses regarding alleged communications with Mayo personnel. *Id.* Ex. B. Plaintiff acknowledged in these supplemental answers that specific allegations in Plaintiff's Complaint – that Leopold was told "he had 'the luxury of time,' that Mayo would not accept a 'marginal' heart for him,'" and that "Mayo would wait for the 'perfect' heart," were memorialized on the Recording. *Id.* at 13. And—now that the Recording has been revealed—Plaintiff's supplemental interrogatory answers expressly refer to these statements as factual bases for, at minimum, Plaintiff's negligent nondisclosure claim. *Id.* at 25-27, 29.

On September 29, Plaintiff's counsel sent counsel for Mayo an email demanding that Mayo amend its responses to Plaintiff's Requests for Admissions to acknowledge statements Dr. Ternus made in the Recording because, "[n]ow that [Mayo has] seen the video of Dr. Ternus's discussion with the family," Mayo must know "<u>beyond a shadow of a doubt</u>" and "to a 100% certainty" that the

statements on the Recording were made. Brantingham Decl. Ex. S at 3 (emphasis in original).

## ARGUMENT

The Court should exclude Dr. Ternus's deposition testimony from any use in this case and impose monetary or other appropriate sanctions because Plaintiff egregiously violated the governing discovery rules to gain an improper tactical advantage. As detailed below, there is no good-faith legal support for Plaintiff's professed belief that a party can unilaterally withhold evidence from discovery simply by claiming an intent to use it for impeachment—and Plaintiff's own pleadings demonstrate Plaintiff *did not* use the Recording solely for impeachment in any event. Plaintiff's violation prejudiced Mayo by depriving it of key information necessary to prepare its witnesses and its case, and by imposing unnecessary burden and cost on Mayo.

## I.    The Recording is Relevant, Significant, and Responsive to Multiple Mayo Discovery Requests

The Recording is undisputedly relevant to the issues in this case. It memorializes statements by a Mayo physician upon which Plaintiff expressly relied in her Complaint and, belatedly, in her discovery responses setting forth the factual grounds for her claims. There can likewise be no dispute that the Recording is responsive to multiple discovery requests by Mayo. Plaintiff should have identified and produced the Recording in her initial disclosures, but did not. Plaintiff should have identified and produced the Recording in response to multiple discovery requests from Mayo, but did not. Instead, Plaintiff shielded the Recording from discovery until the deposition of Dr. Ternus, and was only

able to do so by responding to Mayo's prior requests with a series of spurious objections and false statements.

**Mayo's Interrogatory No. 7** requested that Plaintiff "[d]escribe all discussions, conversations, or statements, written or oral, made by any employee or representative of Mayo, concerning Noah Leopold's medical condition, care, services, testing, treatment, or damages . . . ." Brantingham Decl. Ex. H at 5. The Recording obviously fits this description. In response, Plaintiff did not identify the Recording or describe its content, and instead objected to the Interrogatory as supposedly requesting "information that is equally under the control of Defendant." *Id.* Ex. I at 20. Plaintiff's objection was legally invalid, *see Ryan v. United Recovery & Remarketing, LLC,* 2022 U.S. Dist. LEXIS 112914, at *2 (E.D. Mo. June 27, 2022), but more important for present purposes, Plaintiff's representation that all responsive information was in Mayo's control was plainly false. Plaintiff knew Mayo did not have a copy of the Recording, which was made surreptitiously and without Dr. Ternus's consent, and remained solely in the possession and control of Plaintiff and her counsel.[1]

---

[1] Plaintiff may argue that Dr. Ternus should have been aware of his own prior statements, but any such contention is belied by common sense and the rules. Witnesses frequently do not recall statements, made months or years earlier, verbatim. That is one reason why Rule 26 gives parties and witnesses an absolute right to obtain their own prior statements in discovery. Fed. R. Civ. P. 26(b)(3)(C); *see also Jerolimo v. Physicians for Women, P.C.,* 238 F.R.D. 354, 357 (D. Conn. 2006). And Plaintiff deprived Mayo of even a reasonable opportunity to inquire of Dr. Ternus by refusing to respond to Mayo's interrogatory with any description of the conversation memorialized in the Recording, or even to identify any of the individuals—among the many dozens who cared for Leopold over nearly a decade—who allegedly made statements Plaintiff simply attributed to "Mayo."

**Mayo's Interrogatory No. 10** asked Plaintiff to "[i]dentify any statements taken from parties or nonparties pertaining to this action," incorporating the definition of "statement" in Fed. R. Civ. P. 26(b)(3). Brantingham Decl. Ex. H at 5. The Recording is a "statement" as so defined, i.e., a "contemporaneous . . . mechanical, electrical, or other recording . . . that recites substantially verbatim [Dr. Ternus's] oral statement." *See* Fed. R. Civ. P. 26(b)(3)(C)(ii). Plaintiff declared in response that she was "aware of no 'statements' as that term has been defined." Brantingham Decl. Ex. I at 21. That representation too was plainly false. Plaintiff obviously knew about the Recording; she quoted it in her Complaint.[2]

**Mayo's Interrogatories Nos. 13-16** asked for a detailed description of the factual basis for certain claims and allegations in Plaintiff's Complaint, including express quotes that, as has now become clear, came directly from the Recording. Plaintiff refused to answer these interrogatories based on a frivolous objection that Mayo's first 12 interrogatories somehow exceeded the 25-interrogatory limit set by the Court's Scheduling Order. Unsurprisingly, having accomplished the goal of concealing the Recording until completing Dr. Ternus's deposition-by-surprise, Plaintiff has now withdrawn that spurious objection and answered

---

[2] Plaintiff objected to this interrogatory on the basis of the work product doctrine, but that objection is meritless, as the work product doctrine does not permit withholding of a previous statement by a "party or other person." Judges in this district have expressly held that "clandestine recordings of conversations with potential fact witnesses, whether made by a party or by counsel, before or after counsel is consulted, are not shielded under the work-product doctrine." *Incompass IT, Inc. v. Xo Commc'ns Servs., Inc.*, 2012 U.S. Dist. LEXIS 204092, at *5 (D. Minn. Jan. 3, 2012); *see also Elam v. Ryder Auto. Operations*, 179 F.R.D. 413, 417 (W.D.N.Y. 1998) (holding work product doctrine "inapplicable" to non-party's request for his own prior statement) (citing Fed. R. Civ. P. 26(b)(3) and Advisory Committee notes).

these interrogatories at great length. *See* Brantingham Decl. Ex. B. And those answers confirm that Plaintiff does in fact rely upon the statements in the Recording as factual support for her claims. *Id.* at 25-29.

**Mayo's Document Request No. 3** requested production of "[a]ll documents that in any way relate to the allegations and claims made in [Plaintiff's] Complaint, the incident, or the treatment in question, including, but not limited to . . . audio or video recordings." *Id.* Ex. G at 3. The Recording was responsive to this request because it is an "audio or video recording" relating to Leopold's treatment at Mayo that is quoted verbatim in Plaintiff's Complaint.[3]

**Mayo's Document Request No. 9** requested production of "[a]ll documents containing, referring to, or constituting any statement taken from any party or nonparty pertaining to the incident, the treatment in question, or the facts alleged in the Complaint." Brantingham Decl. Ex. G at 4. The Recording plainly is responsive to this request. Dr. Ternus is an employee of Mayo whose "statements" as defined by Fed. R. Civ. P. 26(b)(3) are discoverable as a matter of right by Mayo. *See Hendrick v. Avis Rent A Car Sys.*, 916 F. Supp. 256, 259 (W.D.N.Y. Feb. 29, 1996) ("Given the broad language of [Fed. R. Civ. P. 26(b)(3)], it seems logical that if plaintiff has obtained statements of or authored by [a party], its agents, employees or officers concerning the subject matter of this lawsuit, such statements must be produced to defendant regardless of how

---

[3] Of note, Plaintiff *did* disclose another recording of a telephone conference with a different Mayo witness in response to this document request, presumably because—unlike the Recording of Dr. Ternus—it did not contain statements purportedly supporting Plaintiff's claims and thus there was no perceived tactical value in concealing it until it could be used for surprise cross-examination. *See* Brantingham Decl. Ex. T at 2.

plaintiff obtained them."). Plaintiff's response to this request simply incorporated her answer to Interrogatory No. 10, i.e., the false representation that Plaintiff was not aware of any "statements." Brantingham Decl. Ex. T at 5.

## II.     No Rule or Case Authorizes Withholding or Delaying Production of Responsive Documents for Use as Purported "Impeachment" Evidence

Plaintiff's only purported justification for withholding the Recording from discovery has been to claim it was intended to be used for impeachment purposes. Brantingham Decl. Ex. N at 37:10-38:13. But the language of the Federal Rules and an overwhelming body of case law confirm this justification is and always was untenable. First, even assuming for the sake of argument that Plaintiff actually did intend to use the Recording "solely for impeachment purposes"—which is plainly untrue as explained below—the Rules *do not* exempt impeachment evidence from disclosure in response to a party's discovery requests. While Fed. R. Civ. P. 26(a) exempts impeachment evidence from *automatic initial and pretrial disclosures*, Rule 26(b)—which governs affirmative discovery requests—contains no such exception. Second, Plaintiff has not used the Recording solely for impeachment purposes, so the premise of her sole justification for withholding the Recording was false from the start.

### A.     Rule 26(b) Required Disclosure of the Recording Regardless of Plaintiff's Alleged Intent to Use it for Impeachment

Rule 26 encompasses two discrete sections governing different forms of discovery. Rule 26(a) establishes requirements for parties to automatically disclose certain categories of evidence—initial disclosures, expert disclosures, and pretrial disclosures—without the need for the opposing party to serve discovery requests. Rule 26(b), in contrast, governs "discovery scope and limits"

more broadly, including parties' obligations in responding to written discovery requests. *Compare Roman v. City of Chicago*, 2023 U.S. Dist. LEXIS 2509, at *13 (N.D. Ill. Jan. 6, 2023) ("the provisions of Rule 26(a) are generally regarded as rules that govern mandatory and automatic disclosures that parties must provide 'without awaiting a discovery request[.]'") *with Dziadek v. Charter Oak Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 26703, at *14 (D.S.D. Mar. 3, 2014) ("The scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure is broad").

The plain language of Rule 26 confirms there is not the slightest merit to Plaintiff's contention that she was entitled to conceal the Recording in response to Mayo's interrogatories and document requests under Rules 33 and 34. Rule 26(a) provides that a party need not disclose evidence *in its automatic initial disclosures or pretrial disclosures* if "the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1), (a)(3). Rule 26(b) contains no such language. *See Rennenger v. Aquawood, LLC*, 2023 U.S. Dist. LEXIS 194671, at *29-*30 (S.D. Iowa Feb. 10, 2023) ("Plaintiffs may not withhold documents on the basis their use would be used solely for impeachment. While Rule 26(a)(1) provides for such a limitation as to initial disclosures, the scope of discovery in general under Rule 26(b)(1) does not."). Even accepting Plaintiff's false premise that the Recording was solely impeachment material, that would mean *only* that Plaintiff was not obligated to disclose the Recording in her initial disclosures. It would not mean that Plaintiff had any right to conceal the Recording in responding to Mayo's express discovery requests.

Federal courts agree: Rule 26(b) requires that "the recipient of a properly propounded document request must produce all responsive, non-privileged

documents without regard to the recipient's view of how that information might be used at trial. ***A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence at trial***." *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001) (emphasis added). The Sixth Circuit in *Varga* addressed the exact same argument Plaintiff makes here—that "a party served with specific discovery requests may withhold otherwise relevant evidence if that party unilaterally concludes that the only useful purpose for the evidence at trial is impeachment." *Id.* And even though the *Varga* court concluded the complaining party had waived this issue for purposes of appeal, it was so troubled by the conduct and purported justification of the party that had concealed evidence, that the court went out of its way to explain why that party's position was "patently wrong" and "so devoid of merit as to be specious." *Id.*

Numerous other federal courts have reached the same conclusion. *See, e.g.*, *Standley v. Edmonds-Leach*, 783 F.3d 1276, 1282 n.1 (D.C. Cir. 2015) ("By contrast to Rule 26(a), Rule 26(b) does not on its face protect from disclosure evidence that will be used for impeachment at trial."); *Elion v. Jackson*, 544 F. Supp. 2d 1, 7 (D.D.C. 2008) ("To repeat, Rule 26(b), which governs formal discovery—unlike Rule 26(a)—does not include an exception for witnesses whose testimony would be 'solely for impeachment.'"); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) ("No special status is given to impeachment evidence under Rule 26(b)(1)."); *Rennenger*, 2023 U.S. Dist. LEXIS 194671, at *29-*30; *Blair v. Crown Point Resort, Inc.*, 2014 U.S. Dist. LEXIS 71973, at *13-*14 (E.D. Ark. May 27, 2014) ("Regardless of a party's duty to make initial disclosures

under Rule 26(a), this Court determines that all impeachment evidence is discoverable in response to a specific request under Rule 26(b).”); *see also* 8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2015 (3d ed. 2014) (Although “[t]he initial disclosure requirements exclude items that the disclosing party may use ‘solely for impeachment,’ . . . no such categorical limitation applies to material sought through discovery . . . . [t]he fact that the party responding to discovery intends to use the material only for impeachment does not take it out of the realm of discoverable material if it is otherwise relevant.”) (cleaned up).[4]

Plaintiff had no legal justification to withhold the Recording from discovery. The plain text of Rule 26 and the overwhelming consensus in the case law confirm this beyond any reasonable debate. And even momentary reflection on the structure and function of the discovery rules shows why Plaintiff’s position could not possibly be correct. Taken seriously, Plaintiff’s position would mean that any party could withhold from discovery any otherwise relevant and discoverable evidence simply by unilaterally and secretly declaring that the material is only for impeachment. If that were true, the rules of discovery would break down completely. *See Klonoski v. Mahlab*, 156 F.3d 255, 270 (1st Cir. 1998) (if

---

[4] The Recording was indisputably responsive to numerous discovery requests propounded by Mayo, and Plaintiff should have produced it. *See supra* at 7-8, 13-17. If that were not enough, Mayo even asked Plaintiff’s counsel *directly* whether Plaintiff was withholding any recordings or videos that were relevant to Plaintiff’s complaint. *See* Brantingham Decl. Ex. K at 3-4. Plaintiff’s counsel responded that Plaintiff had “produced all information responsive to [Mayo’s] RFP 3 and 4 (not to mention the rest of your discovery requests) that is discoverable and not privileged.” *Id.* at 1. Plaintiff’s counsel did not indicate that Plaintiff was withholding “impeachment” evidence, which would have led to additional inquiry at minimum. *Id.*

discovery of purported impeachment evidence "'is not permitted the discovery rules might as well be repealed.'") (quoting 8 Wright & Miller, *supra*).

### B.  Plaintiff Has Not Used the Recording Solely as Impeachment Evidence, Vitiating Plaintiff's Sole Justification for Withholding It

Because Rules 26(b), 33 and 34 unquestionably required Plaintiff to identify and produce the Recording prior to depositions *even if* it were solely for impeachment, the Court's analysis can end there. Yet Plaintiff's own pleadings and conduct also confirm that the sole premise of her self-serving argument is wrong. Plaintiff did not intend to use the Recording "solely for impeachment." Instead, she relied on it expressly as the factual basis for her claims and continues to do so, meaning Plaintiff should have produced the Recording with her initial disclosures.

The Rules do not define "impeachment" evidence. Federal courts have characterized impeachment evidence as that "which is offered to discredit a witness" or to "reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her." *Klonoski*, 156 F.3d at 270 (citing *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513 (5th Cir. 1993)) (cleaned up); *see also Wegener*, 527 F.3d at 691 ("Impeachment is an attack on the credibility of a witness.") (cleaned up). "Substantive" evidence, in contrast, is "that which is offered to establish the truth of a matter to be determined by the trier of fact." *Klonoski*, 156 F.3d at 270. Some evidence can serve both functions, in which case it is not "*solely* for impeachment" under Rule 26(a). *See id.*

By these definitions, the Recording is not solely for impeachment. Plaintiff's Complaint cites statements made in the Recording as central facts

purportedly supporting Plaintiff's claims. *See, e.g.,* Compl. ¶¶ 9, 12, 26, 30. And Plaintiff's supplemental interrogatory answers confirm Plaintiff relies on the Recording as support for her claims. *See supra* at 12, 15-16. Plaintiff's claims for negligent nondisclosure and medical battery necessarily put at issue statements and alleged "assurances" Mayo personnel made to Leopold in providing medical care to him. The Recording, which memorializes statements made by a Mayo physician to Leopold, and which Plaintiff herself alleges as grounds for her claims, is evidence that relates to "the truth of a matter to be determined by the trier of fact." *Chiasson*, 988 F.2d at 517. It is accordingly substantive evidence that is *not* solely for impeachment and is *not* exempt from even the automatic discovery mechanisms of Rule 26(a). The Recording should have been "disclosed … regardless of its impeachment value." *Id.*; *Klonoski*, 156 F.3d at 270 (1st Cir. 1998) (impeachment evidence which is at least in part substantive did not fall within the "solely for impeachment" exceptions of Rule 26(a)); *Wilson v. AM General Corp.*, 167 F.3d 1114, 1122 (7th Cir. 1999) (undisclosed witnesses possessing substantive knowledge of party's defenses could not be limited to a "solely for impeachment" classification and should have been included in party's Rule 26(a) pretrial disclosures); *Buehrle v. City of O'Fallon*, 2011 U.S. Dist. LEXIS 74821, at *22 (E.D. Mo. July 12, 2011) (requiring disclosure of affidavit that "was at least partially substantive, and therefore was required to be disclosed in accordance with Rule 26(a)") (citing *Klonoski*, 156 F.3d at 270).

*Costa v. AFGO Mech. Servs.*, 237 F.R.D. 21 (E.D.N.Y. 2006), illustrates the inappropriateness of Plaintiff's purported justification for concealing the Recording. *Costa* involved an employment discrimination claim. *Id.* at 22. Prior to

the termination that was the subject of her lawsuit, plaintiff secretly recorded several telephone conversations with defendants. *Id.* After discovery commenced, plaintiff moved for a protective order, seeking to delay production of the recordings until after the depositions of defendants.[5] *Id.* Plaintiff argued she had an interest in doing so out of concern that the witnesses would tailor testimony to match the recorded statements. *Id.*

The *Costa* court disagreed. As set forth above, the court recognized that the scope of discovery under Rule 34 is governed by Rule 26(b). *Id.* at 23. And pursuant to Rule 26(b)(3), a party's statements—including those captured by electronic means—are "discoverable as of right in the federal courts." *Id.* (quoting 8 Wright & Miller § 2027). In other words, there is no legal justification for a party to take a deposition before disclosing recorded statements in its possession, just like there is no legal justification for withholding statements made in written documents and other records. *Id.* at *24.

Regarding the timing for disclosure of a party's statements, the court in *Costa* required plaintiff to disclose the audiotapes prior to deposition. *Id.* at *24-*25. This timing was particularly important because the plaintiff, like Plaintiff here, obtained the recordings "in a less than forthright manner." *Id.* at *24 (citation omitted). Courts recognize that "the party whose conversation was secretly recorded 'should not be subjected to a deposition, the partial purpose of

---

[5] Unlike the plaintiff in *Costa*, Plaintiff here did not notify the Court or Mayo that she was withholding evidence, nor did she seek permission from the Court to continue to do so. Instead, Plaintiff unilaterally withheld discoverable information, in violation of accepted procedure. *Costa*, 237 F.R.D. at 23 (recognizing that any deferral of disclosure requires action by the court; it cannot be accomplished unilaterally). After all, it is Plaintiff's burden to establish the need for a protective order delaying production of a party statement. *Id.* at 24.

which is simply to create inconsistencies or otherwise set up impeachment in [the defendants'] testimony, without [the defendant] having had a chance to review the tapes.'" *Id.* at 25 (quoting *Roberts v. Americable Int'l, Inc.*, 883 F. Supp. 499, 505 (E.D. Cal. 1995)). Unless a statement is disclosed, there is a serious risk that the speaker may be "sandbagged" at deposition. *Id.* (quoting *McDaniel v. Freightliner Corp.*, 2000 U.S. Dist. LEXIS 3497, at *8 (S.D.N.Y. Mar. 23, 2000)).

In addition to these considerations, the *Costa* court required disclosure of the audiotape prior to deposition because it contained substantive evidence, i.e., evidence of the alleged facts and circumstances that led to the filing of the litigation. *Id.* at 25 n.1. Indeed, the plaintiff in *Costa* referenced the recorded statements in her complaint. *Id.* at 25. The same is true here. As stated above, Plaintiff expressly quotes portions of the Recording in her Complaint and references portions of it as factual support for her claims. Pursuant to *Costa* and the weight of authority in this District and elsewhere, the Recording should have been disclosed prior to Dr. Ternus's deposition.

Contrary to the above authority, Plaintiff's counsel cited *Wegener v. Johnson* to support concealment of the Recording, but that case provides no support for Plaintiff's position. *Wegener* is inapposite at the threshold because it concerned disclosure of expert testimony under Rule 26(a)—not withholding of factual evidence in response to discovery requests under Rules 26(b), 33, and 34 as was the case here. Regardless, the Eighth Circuit in *Wegener* concluded that the undisclosed testimony at issue actually *was not* impeachment evidence—as is also the case here—and affirmed its exclusion as a sanction for the plaintiff's

failure to disclose it. *Id.* at 691, 694. Here too, exclusion of Dr. Ternus's ill-gotten deposition testimony would be an appropriate sanction for Plaintiff's violation.

### III.   The Court Should Exclude Dr. Ternus's Deposition from Further Use in the Case as a Remedy for Plaintiff's Discovery Violation

#### A.   Rule 37 Requires Imposition of Sanctions Unless Plaintiff Can Demonstrate that the Violation Was Substantially Justified or Harmless

Federal Rule of Civil Procedure 37 "gives a district court broad authority to impose sanctions for failure to respond to discovery requests or to disclose information required by Fed. R. Civ. P. 26(a)." *Collins v. Burg*, 169 F.3d 563, 565 (8th Cir. 1999).

In particular, Rule 37(a) empowers the Court to compel disclosure of discoverable information and to impose appropriate sanctions for a party's "failure to disclose" documents or information in response to discovery requests. And the Rule defines "an evasive or incomplete disclosure, answer, or response," as "a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). If the Court grants such a motion the "court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or the attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i), (iii).

Rule 37(c) applies when a party "fails to provide information or identify a witness as required by Rule 26(a)" or to supplement disclosures as required by Rule 26(e). The Rule mandates that the non-disclosing party "is not allowed to

use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless," and empowers the Court to impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1). "Rule 37(c) *requires* the imposition of sanctions when 'a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . unless the failure was substantially justified or is harmless.'" *United States ex rel. Fesenmaier v. The Cameron-Ehlen Grp., Inc.*, 2021 U.S. Dist. LEXIS 5684, at *66-*67 (D. Minn. Jan. 12, 2021) (citing Fed. R. Civ. P. 37(c)(1)) (emphasis in original).

The Court may analyze Plaintiff's violation in this case under either subpart of Rule 37. Plaintiff *was* required to disclose the Recording under Rule 26(a) because Plaintiff has not used the Recording "solely for impeachment"—as explained *supra* at 17-25—mandating sanctions under Rule 37(c). And in all events, Plaintiff was obligated to disclose the Recording in response to Mayo's multiple discovery requests, calling for sanctions under Rule 37(a). Viewed as charitably as possible, Plaintiff's discovery responses cited above were "evasive or incomplete." Fed. R. Civ. P. 37(a)(4). Viewed objectively, they were affirmatively misleading.

Regardless of which subsection of Rule 37 the Court applies, sanctions are mandatory unless Plaintiff can demonstrate that her violation was substantially justified or harmless.

When determining whether a violation was substantially justified or harmless, district courts consider four principal factors: (1) the importance of the excluded material; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from

allowing the material to be used; and (4) the availability of a continuance to cure such prejudice. *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795-96 (D. Minn. 2000) (citing *Citizens Bank of Batesville, Ark. v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994)).

Plaintiff, as the "offending party," bears "the burden to demonstrate that her conduct was substantially justified or harmless." *Baird v. Burlington N. Santa Fe*, 2013 U.S. Dist. LEXIS 189467, at *39 n.8 (D. Minn. Mar. 1, 2013). Plaintiff cannot carry that burden.

Plaintiff's concealment of the Recording so that she could surprise Mayo and its witness in the middle of a deposition was utterly unjustifiable and not harmless. For all the reasons detailed above, Plaintiff never had a good-faith legal basis to withhold the Recording from discovery. The justification offered by Plaintiff's counsel after revealing the Recording is not a reasonable reading of the law; it is a facial misapplication of the plain language of Rule 26 and a single case (*Wegener*)—an exercise in self-serving distortion of the law so "patently wrong" and "so devoid of merit as to be specious." *Varga*, 242 F.3d at 697. And while the Rules require sanctions regardless of the subjective intent or belief of Plaintiff or her counsel, Mayo respectfully submits that the factual record demonstrates unequivocally that Plaintiff's concealment of the Recording was not an inadvertent error or innocent misapprehension of her discovery obligations—it was a deliberate scheme to conceal the evidence until Plaintiff could attempt to induce Mayo or its witnesses to unknowingly make statements contradicted by the Recording, and surprise Mayo and Dr. Ternus with the Recording during his

deposition in a bid to damage his credibility or otherwise influence his testimony.

Only such an intentional scheme could explain why Plaintiff (1) served Mayo with Rule 36 requests to admit statements that Plaintiff—but not Mayo—*already knew* were memorialized on the Recording; (2) falsely denied being aware of any "statements" in response to Mayo's discovery requests; (3) refused to describe the content of the Recording in response to Mayo's Interrogatory No. 7 on the ground that it sought "information that is equally under the control of Defendant" when Plaintiff knew Mayo was not aware of the Recording; and (4) refused to answer Mayo's interrogatories regarding alleged statements by Mayo based on a specious objection that Mayo had exceeded the maximum number of allowed interrogatories—an objection so obviously frivolous that Plaintiff promptly withdrew it after having accomplished her goal of delaying disclosure of the Recording until Dr. Ternus's deposition. This was no accident. But regardless, intentional or otherwise, Plaintiff's egregious cannot be justified.

Neither was Plaintiff's violation harmless. By concealing the Recording until Dr. Ternus's deposition, Plaintiff was able to procure testimony from Dr. Ternus that was unfairly influenced both by his initial lack of awareness of what was said on the Recording, then by the effect on the witness of being surprised by a surreptitious recording that Plaintiff's counsel presented as purportedly "impeaching" his prior testimony. *See, e.g.*, *Costa*, 237 F.R.D. at 25 ("[T]he party whose conversation was secretly recorded should not be subjected to a deposition, the partial purpose of which is simply to create inconsistencies or otherwise set up impeachment . . . .").

28

None of the four factors mentioned above supports a finding that Plaintiff's violation was justified or harmless. Though the Recording may be important insofar as Plaintiff relies on it in support of her claims, Mayo is not asking the Court to exclude the Recording from evidence at this time—only to exclude Dr. Ternus's testimony that was improperly procured through concealment of the Recording. And the remaining factors weigh heavily against Plaintiff. As detailed *supra*, Plaintiff concealed the Recording from multiple discovery requests over a period of months in an attempt to preserve the surprise for Dr. Ternus' deposition. *Supra* at 4-13. Plaintiff's claimed explanation for this failure to comply—i.e., that the recording was mere "impeachment" evidence—is contrary to Plaintiff's own pleadings and conduct, the Federal Rules and case law. *See supra* at 4-25. And the prejudice to Mayo is not "potential" nor is a "continuance" available to cure the prejudice—Plaintiff has already used the Recording for a prejudicial purpose, namely to procure testimony from Dr. Ternus by surprise. *Supra* at 10-11.

### B.  The Court Should Preclude Use of Dr. Ternus's Deposition for Any Purpose and Impose Monetary Sanctions

The Court has "considerable discretion in fashioning an appropriate sanction" for discovery violations, including for "late-disclosed information." *Steady State Imaging, LLC v. GE*, 2018 U.S. Dist. LEXIS 75119, at *7-*8 (D. Minn. May 2, 2018). Mayo respectfully requests that the Court (1) preclude Plaintiff from using Dr. Ternus's deposition testimony for any purpose in this litigation; and (2) impose monetary sanctions in an amount the Court determines to be appropriate.

Exclusion of Dr. Ternus's deposition is appropriate for at least two reasons. First, it is the only way to cure the prejudice occasioned by Plaintiff's concealment of the Recording. Generally, it is proper for a district court to exclude deposition testimony that is improperly elicited. *See, e.g., Jordan v. Ventura,* 2019 U.S. Dist. LEXIS 40199, at *2-*4 (W.D. Ark. Mar. 13, 2019) (ruling that "deposition testimony concerning caution triangles is excluded" because of previously struck affirmative defenses); *see also Treminio v. Crowley Mar. Corp.,* 2023 U.S. Dist. LEXIS 209411, at *15-*16 (M.D. Fla. Nov. 22, 2023) (excluding pre-trial testimony of witness because counsel's "tactical decision to withhold information" regarding the witness flouted both the "letter" and the "spirit" of Rule 26); *Smith v. Pfizer, Inc.,* 265 F.R.D. 278, 284 (M.D. Tenn. 2010) (excluding witnesses from testifying is "proper sanction" to provide "strong inducement for disclosure of material" where party failed to abide by requirements of Rule 26); *Eno v. Forest River,* 2021 U.S. Dist. LEXIS 250443, at *6-*8 (W.D. Wash. July 1, 2021) (excluding deposition transcript for violation of Rule 26(a)).

Second, exclusion of Dr. Ternus's deposition testimony is an appropriate sanction because it deprives Plaintiff of at least some of the benefit of her violation of the discovery rules. Mayo and Dr. Ternus had a right to be aware of the Recording prior to Dr. Ternus's deposition. Plaintiff flagrantly violated that right, for the obvious purpose of procuring testimony by surprise. It is only right to preclude Plaintiff from enjoying the benefit of her violation. If the Court were to decline to impose this remedy, Plaintiff would essentially be rewarded for violating the discovery rules. And such a decision could only be seen by other

parties and attorneys as encouragement to similarly play fast and loose with the rules of discovery.

Mayo also respectfully requests that the Court impose monetary sanctions pursuant to Rule 37, in any amount the Court determines to be appropriate. Again, this sanction is justified for at least two reasons.

First, Plaintiff's abuse of the discovery rules imposed on Mayo burden and expense that would not have been incurred if Plaintiff had obeyed the rules. As explained above, Plaintiff served requests for admissions demanding that Mayo admit certain statements memorialized on the Recording, while simultaneously concealing from Mayo that these statements were already on video. The "purpose of Rule 36 is to remove uncontested issues and prevent delay." *Bakambia v. Schnell*, 2021 U.S. Dist. LEXIS 193975, at *21 (D. Minn. Oct. 7, 2021). Plaintiff's bid to use Rule 36 requests to garner admissions about statements that were already recorded on video, without disclosing the Recording, was inconsistent with that purpose. It was a rank abuse of discovery procedures, the only conceivable purpose of which was to gain an improper tactical advantage, and the actual effect of which was at minimum to impose unnecessary burden and expense on Mayo insofar as Mayo was compelled to investigate and respond to allegations Plaintiff already knew to be supported by the Recording. Indeed, Plaintiff has now demanded that Mayo amend its responses to Plaintiff's Requests for Admissions to admit having made statements on the Recording because—as Plaintiff knew the moment she served the Requests for Admissions—the Recording shows "to a 100% certainty" that those statements were made. Brantingham Decl. Ex. S at 3. Plaintiff's demand confirms these

Requests for Admissions were not good-faith requests for information or an attempt to narrow the issues in dispute—from the outset, they were intended as a trap or a means to simply impose burden on Mayo with no evidentiary purpose.

Mayo also incurred unnecessary burden and expense framing additional discovery requests to explore the basis for Plaintiff's allegations, such as Mayo's Interrogatories Nos. 13-16, and then in following up on those requests after Plaintiff refused to answer them, based on frivolous objections, to buy time until she could complete the deposition-by-surprise of Dr. Ternus.

Second, monetary sanctions are appropriate to deter Plaintiff and other parties in this District from engaging in similar violation of the discovery rules. *See, e.g.*, *Mgmt. Registry, Inc. v. A.W. Cos.*, 2020 U.S. Dist. LEXIS 197472, at *7 (D. Minn. Oct. 23, 2020) (recognizing that the purpose of discovery sanctions, including monetary sanctions, is to "deter dilatory and prejudicial conduct"). If parties are permitted to spurn the rules without consequences, the rules lose their meaning. The Court should not permit this.

## CONCLUSION

For the foregoing reasons, Mayo respectfully requests that the Court enter an order precluding Plaintiff from using Dr. Ternus's deposition for any purpose in this case, and imposing monetary sanctions in an amount the Court deems appropriate.

Dated:  October 1, 2024

DORSEY & WHITNEY LLP

By   */s/ Andrew Brantingham*
    Andrew Brantingham (#0389952)
    brantingham.andrew@dorsey.com
    Nathan J. Ebnet (#0395217)
    ebnet.nathan@dorsey.com
    Samuel Audley (#0401766)
    audley.samuel@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 492-6753
Facsimile:  (612) 340-2868

*Attorneys for Defendant Mayo Clinic*