# Exhibit CC

| From: | Brandon E. Thompson |
|---|---|
| To: | Hanzel, Matthew J., J.D. |
| Cc: | Maggie M. Palmisano; Anna C. Messerly; Pamela A. Keenan |
| Subject: | Noah Leopold matter |
| Date: | Friday, January 12, 2024 12:43:00 PM |
| Attachments: | image001.png |

Dear Matt:

Hope all is well. I'm writing to let you know about a very significant new matter. We represent the next-of-kin of Noah Leopold, who died at Mayo this past September following a catastrophic attempted heart transplant. Noah was forty years old. He was married, and was an attorney who was poised to take over his parents' very successful law practice in Florida.

We have had this case reviewed by multiple experts, all of whom agree that the standard of care was not followed in Noah's care and that the breaches of the standard of care caused Noah's death. We intend to move forward with a claim.

I suspect you may know about this case already. Either way, I would appreciate the chance to talk with you (or someone else on Mayo's behalf) about it. We believe this is certainly a case that merits serious pre-suit discussions.

I look forward to hearing from you.

Best regards,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



**From:** Hanzel, Matthew J., J.D.
**Sent:** Tuesday, January 16, 2024 9:22 AM
**To:** 'Brandon E. Thompson' <BET@ciresiconlin.com>
**Cc:** Maggie M. Palmisano <mmp@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Buys, Amanda J. <Buys.Amanda@mayo.edu>; Peterson, Sheri L. <Peterson.Sheri2@mayo.edu>
**Subject:** RE: Noah Leopold matter

Hello, Brandon. Hope all is well with you too.

This was not on our radar. I'm going to need a few weeks to look into it. I will get back to you in February with my preliminary thoughts. Thank you.

-Matt

| | |
|---|---|
| **From:** | Hanzel, Matthew J., J.D. |
| **To:** | Brandon E. Thompson |
| **Cc:** | Maggie M. Palmisano; Anna C. Messerly; Pamela A. Keenan; Buys, Amanda J.; Peterson, Sheri L. |
| **Subject:** | RE: Noah Leopold matter |
| **Date:** | Wednesday, February 21, 2024 3:37:21 PM |
| **Attachments:** | image001.png |

Brandon,

We have reviewed the care provided to Mr. Leopold, and we do not see any basis for a claim of negligence. Unless there is additional specific information you would like Mayo to consider, the claim is denied. If your client wishes to move forward with litigation, Andrew Brantingham has been authorized to accept service on behalf of Mayo Clinic.

-Matt



**VIA EMAIL**
March 15, 2024

Matt Hanzel
Mayo Clinic – Legal Department
200 SW First Street
Rochester, MN 55905
Hanzel.matthew@mayo.edu

Andrew Brantingham
Dorsey & Whitney
50 South 6th Street
Suite 1500
Minneapolis, MN 55402
Brantingham.andrew@dorsey.com

Re: *Noah Leopold*

Dear Matt and Andrew,

As you know, we are pursuing a malpractice claim against Mayo on
behalf of Noah Leopold's next-of-kin. As part of our investigation of
that claim we have obtained and reviewed what purports to be
Noah's entire Mayo medical record. That record does not appear to
contain variety of different types of information that will almost
certainly be of critical relevance to this case moving forward. I am
writing, therefore, to put you on notice of our request for the
following things:

Brandon E. Thompson
Partner

E: BET@CiresiConlin.com
P: 612-361-8209

225 South 6th St.
Suite 4600
Minneapolis, MN 55402
612-361-8200
CiresiConlin.com

Matt Hanzel and Andrew Brantingham
March 15, 2024
Page 2

1.  Documentation of all communications of any kind related to the assessment of the
    suitability of the donor heart that was procured for Noah Leopold on or about August
    29, 2023. This includes any documentation of phone calls, text messages, pages, emails,
    or any other form of communication involving Mayo personnel in any way.

2.  All documents of any kind evidencing assessment of Noah Leopold's predicted heart
    mass.

3.  All records of any kind pertaining to the donor. This includes, but is not limited to, any
    record evidencing in any way the health status of the donor.

4.  All records of any kind pertaining to the donor heart. This includes, but is not limited to,
    the following:

    a.  CT, MRI, ultrasound, or any other imaging of the donor heart;

    b.  Measurements of the dimensions of the donor heart;

    c.  Anything documenting heart data gathered or monitored during transit, including
        lactic acid trends;

    d.  Any photographs or descriptions of any kind of the donor heart;

    e.  All records maintained by UNOS;

    f.  All records maintained by TransMedics;

    g.  All records maintained by LifeSource or any other similar organ procurement entity.

5.  The identities of all personnel – including but not limited to Mayo personnel – who
    participated in the procurement of the donor heart in any way.

6.  A description of the education, training, and clinical and surgical experience of all
    personnel – including but not limited to Mayo personnel – who participated in the
    procurement of the donor heart in any way.

I would appreciate it if you would provide the above information to me at your earliest
convenience, without waiting for a formal lawsuit and subsequent discovery request. It
is entirely possible that this information may impact the course of this litigation.

Regardless of whether you are willing to provide any or all of this information now,
please let this letter serve as notice that we consider all of the above information to be
highly relevant to this impending litigation. All of the above information therefore must
be preserved for litigation purposes. Failure to take measures to ensure that all such

Matt Hanzel and Andrew Brantingham
March 15, 2024
Page 3

information is preserved – and, to the extent any such information has not already been
preserved, recovered – will be deemed spoliation of evidence.

Thank you for your prompt attention to this important matter. Please don't hesitate to
reach out if you have any questions.

Yours truly,

Brandon Thompson

/pak

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Monday, April 22, 2024 3:46 PM
**To:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Ebnet, Nathan <Ebnet.Nathan@dorsey.com>
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>
**Subject:** Leopold - Rule 26 conference

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Andrew, I'm writing to get the ball rolling on our Rule 26(f) discovery conference. Do you have time this week to discuss?

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

<image001.png>

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

Ex. CC to Declaration of Brandon Thompson                                                    7

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Tuesday, April 23, 2024 9:02 AM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; brantingham.andrew@dorsey.com
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>
**Subject:** RE: Leopold - Rule 26 conference

Brandon,

We're available starting next week Wednesday. I'll propose Thursday, May 2, at 10 AM or 2 PM. Do either of those times work?

5

-Nate Ebnet

DORSEY & WHITNEY LLP
P: 612.492.6753

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Tuesday, April 23, 2024 9:33 AM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Brantingham, Andrew <brantingham.andrew@dorsey.com>
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>
**Subject:** RE: Leopold - Rule 26 conference

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Let's do 10 am on the 2nd. We should probably circulate a draft Rule 26 report just so we have something to work off of. Do you guys want to draft one (I always find the defense wants to push dates later than I do!), or do you want me to?

> **Brandon Thompson**
> *Partner*
>
> P: 612-361-8209
> C: 651-503-4791
> E: BET@ciresiconlin.com

<image001.png>

> Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

---

**From:** Ebnet, Nathan
**Sent:** Tuesday, April 23, 2024 9:38 AM
**To:** 'Brandon E. Thompson' <BET@ciresiconlin.com>; Brantingham, Andrew <brantingham.andrew@dorsey.com>
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>
**Subject:** RE: Leopold - Rule 26 conference

I will pull together a draft and circulate in advance of our meeting.

**-Nate Ebnet**

DORSEY & WHITNEY LLP
P: 612.492.6753

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Wednesday, May 1, 2024 12:25 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; brantingham.andrew@dorsey.com
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Roadfeldt.Christi@dorsey.com
**Subject:** RE: Leopold - Rule 26 conference

Brandon,

Attached is a draft report for discussion tomorrow.

-Nate Ebnet

DORSEY & WHITNEY LLP
P: 612.492.6753

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Thursday, May 2, 2024 11:21 AM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Brantingham, Andrew <brantingham.andrew@dorsey.com>
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>
**Subject:** RE: Leopold - Rule 26 conference

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Good to talk with you both this morning. Here is a version of the report with my suggested edits and my comment on timing.

To briefly summarize the rest of the issues we discussed:

1. You are going to start looking at deposition dates for Mayo witnesses. For Round 1, I am going to want to depose the following (in no particular order):

   Barry Boilson
   Nathan Prince
   Andrew Rosenbuam
   John Eaton
   Bradley Ternus
   Salah Altarabsheh
   Gustavo Knop
   Michael Pick
   Mauricio Villavicencio
   Akshay Chauhan
   Paul Tang

   As I mention in my comment embedded in the draft report, I'd like to get this first round completed by the end of July if possible. If that's not possible we will

probably need to push the deadlines. But let's see what we can do in terms of scheduling.

2. I am going to just take all the requests I made in my March letter and put them into formal discovery requests in order to keep everything clean.

3. You indicated that Mayo might have a different view than I do about the appropriate scope of discovery for this case. I gave you a more comprehensive explanation for the various areas I believe need to be explored, in an effort to help you understand my position. It is my position that this is an enormous damages case with very complicated medicine, and that the discovery I'm contemplating is well within the scope contemplated by Rule 26(b)(1). Happy to discuss this further though.

Look forward to hearing your thoughts. In particular I do hope we can have another conversation about deposition dates before you start trial the week of May 13.

Best,

Brandon


**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

<image001.png>

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

On May 7, 2024, at 9:03 AM, Ebnet.Nathan@dorsey.com wrote:

Brandon,

We have reviewed your proposals with Mayo. In general, we are willing to work with you on deposition scheduling and a modified expert disclosure deadline. We are looking into the scheduling details and we anticipate we'll be in a position to share those details following Andrew's trial. Any objection to submitting a joint letter notifying the Court that the parties intend to submit the 26(f) report shortly after the 14-day deadline set forth in Rule 26(f)(2)? If you agree with this approach, I will prepare a draft letter for your review.

-Nate Ebnet

DORSEY & WHITNEY LLP
P: 612.492.6753

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Tuesday, May 7, 2024 11:26 AM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>
**Cc:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>
**Subject:** Re: Leopold - Rule 26 conference

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

That works for me.

Sent from my iPhone

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Friday, May 10, 2024 2:59 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Roadfeldt.Christi@dorsey.com
**Subject:** RE: Leopold - Rule 26 conference

Brandon,

I'd like to file this next week. Please let me know if you're comfortable with it. Thanks.

-Nate Ebnet

DORSEY + WHITNEY LLP
P: 612.492.6753

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **Sent:** | Friday, May 10, 2024 3:09 PM |
| **To:** | Ebnet.Nathan@dorsey.com |
| **Cc:** | brantingham.andrew@dorsey.com; Anna C. Messerly; Maggie M. Palmisano; Pamela A. Keenan; Roadfeldt.Christi@dorsey.com |
| **Subject:** | Re: Leopold - Rule 26 conference |

I'm fine with this. Have a great weekend.

Sent from my iPhone

---

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Monday, May 20, 2024 2:48 PM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>
**Cc:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>
**Subject:** RE: Leopold - Rule 26 conference

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Andrew and Nathan, when can we get the discovery plan finalized and get depositions scheduled?

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

Ex. CC to Declaration of Brandon Thompson                                              14

**From:** brantingham.andrew@dorsey.com <brantingham.andrew@dorsey.com>
**Sent:** Tuesday, May 21, 2024 11:34 AM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Ebnet.Nathan@dorsey.com
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Roadfeldt.Christi@dorsey.com
**Subject:** RE: Leopold - Rule 26 conference

Brandon,

I am just back from trial and getting caught up on this. We are working on it and will get back with you in the next couple of days.

Thanks,

**Andrew Brantingham**

DORSEY & WHITNEY LLP
P: 612.492.6623

**From:** Brandon E. Thompson
**Sent:** Tuesday, May 21, 2024 12:03 PM
**To:** brantingham.andrew@dorsey.com; Ebnet.Nathan@dorsey.com
**Cc:** Anna C. Messerly; Maggie M. Palmisano; Pamela A. Keenan; Roadfeldt.Christi@dorsey.com
**Subject:** RE: Leopold - Rule 26 conference

Thanks Andrew. Do you think we're going to have some depo dates this week? If not I'll probably send some NOTD just as placeholders.

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

On Jun 17, 2024, at 2:41 PM, Ebnet.Nathan@dorsey.com wrote:


Counsel,

Attached and served upon you are (1) Mayo's Objections and Responses to Plaintiff's First Set of Requests for Production, (2) a proposed protective order, and (3) a cover letter from me regarding Mayo's forthcoming production.

-Nate

**Nathan J. Ebnet**
Partner
Pronouns: He/Him/His

<image001.png>
Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
P: (612) 492-6753
C: (320) 266-7464
CONFIDENTIAL COMMUNICATION
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.*
*Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received*
*this e-mail in error, please do not read this e-mail or any attached items.  Please delete the e-mail and all attachments,*
*including any copies thereof, and inform the sender that you have deleted  the e-mail, all attachments and any copies thereof.*
*Thank you.*

<2024-06-17 - Mayo's Responses to Plaintiff's First Set of RFPs.pdf>
<Ex. A - Simha v. Mayo - Proposed Stipulated Protective Order.docx>

<Simha v. Mayo - 6.17 Cover Letter.pdf>

<image001.png>

<Simha Proposed Protective Order (6.24.24).docx>

On Jun 17, 2024, at 4:00 PM, Brandon E. Thompson <BET@ciresiconlin.com> wrote:

Thanks Nathan. A couple comments on the proposed protective order.

First, I think there needs to be a mechanism allowing the other party to challenge a 'confidential' designation. This has been included in all the protective orders I can recall signing. Do you agree? If so I can circulate some suggested language.

Second, in the section regarding individuals entitled to receive confidential information we need to include Noah's next of kin in the deposition of a party.

Third, with respect to the section dealing with post-litigation destruction: I always insist that the protective order provide for confidential documents to be returned or destroyed within sixty days of conclusion of the case if requested by the party who produced the documents. The onus should be on the party who wants the documents returned or destroyed to put that mechanism into motion, rather than the other party being responsible for 'remembering' to do so without any prompt or request whatsoever.

Please let me know your thoughts asap. I want to get this production right away.

Best,

Brandon

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Wednesday, June 19, 2024 9:44 AM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>
**Cc:** Colin F. Peterson <CFP@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>; Brantingham, Andrew <brantingham.andrew@dorsey.com>; Audley, Samuel <Audley.Samuel@dorsey.com>; Marker, Alyssa <Marker.Alyssa@dorsey.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>
**Subject:** Re: Simha - Mayo's Responses to Plaintiff's RFPs

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Nathan/Andrew, can I get your thoughts on this so we can get the production moving along?

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Thursday, June 20, 2024 7:31 AM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>
**Cc:** Colin F. Peterson <CFP@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela
A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>;
brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Roadfeldt.Christi@dorsey.com
**Subject:** RE: Simha - Mayo's Responses to Plaintiff's RFPs

Brandon,

We're generally fine with your proposals below. Please provide a redline so that we can confirm the
specifics with Mayo. I do note that the protective order, at § 7(a) – (c), contains a mechanism to change
confidentiality designations, including by seeking relief from the Court if necessary.

-Nate Ebnet

DORSEY + WHITNEY LLP
P: 612.492.6753

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Thursday, June 20, 2024 2:33 PM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>
**Cc:** Colin F. Peterson <CFP@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela
A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>; Brantingham, Andrew
<brantingham.andrew@dorsey.com>; Audley, Samuel <Audley.Samuel@dorsey.com>; Marker, Alyssa
<Marker.Alyssa@dorsey.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>
**Subject:** RE: Simha - Mayo's Responses to Plaintiff's RFPs

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Nathan, here are my proposed revisions. Thanks for pointing out 7(a)-(c), I'm not sure I
missed that. That's fine with me in terms of the mechanics of challenging the
designation.

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

<image001.png>

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

On Jun 24, 2024, at 9:56 AM, Ebnet.Nathan@dorsey.com wrote:

Brandon,

These are fine and I've accepted your proposed revisions. I've added one redline of my own; in the definition section, I've clarified that next-of-kin means those persons "defined by applicable law." If you're good with this, we'll get it on file.

-Nate Ebnet

DORSEY + WHITNEY LLP
P: 612.492.6753

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **Sent:** | Monday, June 24, 2024 10:10 AM |
| **To:** | Ebnet.Nathan@dorsey.com |
| **Cc:** | Colin F. Peterson; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly; brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com |
| **Subject:** | Re: Simha - Mayo's Responses to Plaintiff's RFPs |

I'm fine with that.  Go ahead and affix my signature. When can we get the records?

Sent from my iPhone

**From:** Roadfeldt.Christi@dorsey.com <Roadfeldt.Christi@dorsey.com>
**Sent:** Tuesday, June 25, 2024 12:30 PM
**To:** schultz_chambers@mnd.uscourts.gov
**Cc:** brantingham.andrew@dorsey.com; Ebnet.Nathan@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Brandon E. Thompson <BET@ciresiconlin.com>; Colin F. Peterson <CFP@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Subject:** Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS

Your Honor,

Please find attached a Word version of the [Proposed] Protective Order (ECF 15) that was filed this morning in the above-captioned matter.

Respectfully submitted,

**Christi E. Roadfeldt**
**Legal Assistant to:**

*Andrew Brantingham*
*Nathan Ebnet*
*Leyla Bari*
*Alyssa Schaefer*
*Ann Reckin*

*Pronouns: she/her/hers*



DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
**P:** 612.492.6736

**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.*
*Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received*
*this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments,*
*including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.*
*Thank you.*

Please help reduce paper and ink usage. Print only if necessary.

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Tuesday, June 25, 2024 12:36 PM
**To:** Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>

**Cc:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Ebnet, Nathan
<Ebnet.Nathan@dorsey.com>; Audley, Samuel <Audley.Samuel@dorsey.com>; Marker, Alyssa
<Marker.Alyssa@dorsey.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan
<PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Subject:** RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Taking the Court off and following up on yesterday; when can we expect to receive
the documents?

Thanks,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

Ex. CC to Declaration of Brandon Thompson                                          23

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Tuesday, June 25, 2024 2:13 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Roadfeldt.Christi@dorsey.com
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna
C. Messerly <acm@ciresiconlin.com>
**Subject:** RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS

Brandon,

Our next production will occur after the Court enters the protective order. We have additional
documents in-house that we are currently preparing for production, with an anticipated production
timeline of next week should the protective order be in place at that time. We'll update you if
anything changes.

**-Nate Ebnet**

DORSEY + WHITNEY LLP
**P:** 612.492.6753

Ex. CC to Declaration of Brandon Thompson                                                    24

| From: | Brandon E. Thompson |
|---|---|
| To: | Ebnet.Nathan@dorsey.com; Roadfeldt.Christi@dorsey.com |
| Cc: | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Subject: | RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS |
| Date: | Tuesday, June 25, 2024 3:17:00 PM |
| Attachments: | image001.png |
| | image002.png |

Thanks Nathan. When are you planning to send the pathology slides? Those aren't subject to the protective order...

**Brandon Thompson**

*Partner*

P: 612-361-8209

C: 651-503-4791

E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

| From: | Ebnet.Nathan@dorsey.com |
|---|---|
| To: | Brandon E. Thompson; Roadfeldt.Christi@dorsey.com |
| Cc: | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Subject: | RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS |
| Date: | Wednesday, June 26, 2024 11:20:03 AM |
| Attachments: | image001.png |
| | image002.png |

We are currently working with pathology to collect and produce the slides. I have not yet received a firm timeline from them, but I expect it to be in the near term. I will update you when I know more.


-Nate Ebnet

DORSEY + WHITNEY LLP
P: 612.492.6753

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Thursday, June 27, 2024 7:22 AM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>
**Cc:** Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>; Brantingham, Andrew <brantingham.andrew@dorsey.com>; Audley, Samuel <Audley.Samuel@dorsey.com>; Marker, Alyssa <Marker.Alyssa@dorsey.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Subject:** Re: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Nathan, there is absolutely no reason to delay production. I have agreed to the terms of the protective order, and will agree to abide by them until the court formally enters the order.

The reality is that this protective order issue should have been dealt with proactively, rather than waiting until the production deadline. The documents you are withholding - and the pathology slides - are absolutely critical to this case. I asked for them by letter many months ago. When Andrew responded that Mayo wouldn't produce them without a formal discovery request, I made sure to serve a formal discovery request on a timetable that would give me and my experts time to review and analyze the production before depositions.

We are now ten days past your discovery production deadline, and Mayo has produced no documents other than medical records we already had. Worse, in response to my multiple requests to know when I'm going to actually get the important things, I'm getting vague responses that you're 'working on it.' That just isn't acceptable. The rules provide production timelines for a reason.

Please produce the documents immediately. As in today. For the slides, please provide an explanation for why they haven't been produced already - I know from experience that it doesn't take forty days to prepare pathology slides.

Please consider this my attempt to resolve this matter without court intervention.

Best,

Brandon

**From:** brantingham.andrew@dorsey.com <brantingham.andrew@dorsey.com>
**Sent:** Thursday, June 27, 2024 3:43 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Ebnet.Nathan@dorsey.com
**Cc:** Roadfeldt.Christi@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna
C. Messerly <acm@ciresiconlin.com>
**Subject:** RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS

Brandon,

We are not 10 days past our production deadline. We are operating on the terms specified
in our responses to your requests, which stated that documents would be produced after
the Court enters the protective order. Mayo stands by that position, which is consistent
with the applicable rules.

You have not received the vague response that we are "working on it." Nate's response
immediately below told you we expect to produce documents next week if the protective
order is entered. That is a specific, reasonable timeline for production.

With respect to the pathology slides, we have learned that Mayo is moving toward
digitization of pathology slides, and we have required a bit of additional time to
understand the logistics of that format versus producing the original slides. Accordingly,
please let us know if you will accept production of the pathology slides in digital format.

Depositions are six weeks away. Your expert disclosure deadline is six months away. We
adopted that extended schedule in no small part to accommodate your busy calendar. We
will produce the materials soon. You will have plenty of time with them to do what you
need before depositions and expert disclosures.

Regards,

**Andrew Brantingham**

| From: | Brandon E. Thompson |
|---|---|
| To: | "brantingham.andrew@dorsey.com"; Ebnet.Nathan@dorsey.com |
| Cc: | Roadfeldt.Christi@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Subject: | RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS |
| Date: | Thursday, June 27, 2024 9:58:00 PM |
| Attachments: | image001.png |

Andrew, I don't want to get into a big back-and-forth because now that the protective order has been entered I assume I'm going to get the documents before our conference with Judge Schultz next week. But for the record, I do believe your responses are deficient in a number of respects.

As you know, Rule 34 requires that a request either be complied with or objected to within thirty days. If an objection is made, the objection has to be (1) limited to those things that are objectionable, and (2) stated with particularity.

Mayo made the same boilerplate objection to every single one of our RFPs – including, incredibly, the request for our client's medical records. I know you produced the records "subject to" your objection, but I don't think it is appropriate to make boilerplate objections to every request.

Many other requests were objected to, and the documents withheld, based on vaguely-stated concerns about "contractual obligations" and "applicable law." I can't conceive of how much of this information – like text messages between health care providers about Mr. Leopold, for example, or the way Mayo calculated the predicted heart mass ("PMH", a very well-known term of art in the heart transplant world) for this transplant – could possibly be confidential. And you haven't really explained it. But again, I'm assuming I will get that explanation when the confidential designation is used in your production.

Again, I don't want to make a big stink about this because I presume everything is going to be produced forthwith now that the protective order has been entered. Can you commit to getting me the documents prior to our July 2 conference? While I appreciate your confidence in my ability to rapidly prepare for depositions, we have requested a lot of complex data that I'm going to need to review with a lot of experts, and I've got lots of other things going on between now and August.

With respect to the pathology slides, why don't you send them in digital format and then I will reserve the right to demand the actual physical slides if the digital form doesn't work for my experts. Does that sound reasonable?

Best,

Brandon

Ex. CC to Declaration of Brandon Thompson                                    29

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Monday, July 1, 2024 2:57 PM
**To:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Ebnet, Nathan

<Ebnet.Nathan@dorsey.com>
**Cc:** Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>; Audley, Samuel
<Audley.Samuel@dorsey.com>; Marker, Alyssa <Marker.Alyssa@dorsey.com>; Maggie M. Palmisano
<mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly
<acm@ciresiconlin.com>
**Subject:** RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Andrew and team… can I hear from you on these documents?

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Monday, July 1, 2024 3:57 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; brantingham.andrew@dorsey.com
**Cc:** Roadfeldt.Christi@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna
C. Messerly <acm@ciresiconlin.com>
**Subject:** RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS

Brandon,

Shortly, you will receive a supplemental production of documents. Not included in this set are the
digital pathology slides. We received them from Mayo today, but we are currently resolving a
technical issue that prevents us from accessing the files on our systems. Once we have that resolved,
we will produce them to you. I am optimistic we'll be in a position to do so yet this week, but if that
changes, I will let you know.

-Nate Ebnet

DORSEY + WHITNEY LLP
**P:** 612.492.6753

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | Ebnet.Nathan@dorsey.com; brantingham.andrew@dorsey.com |
| **Cc:** | Roadfeldt.Christi@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| **Subject:** | RE: Proposed Protective Order - Simha v. Mayo - Case No. 24-cv-01097-JRT-DTS |
| **Date:** | Monday, July 1, 2024 4:14:00 PM |
| **Attachments:** | image001.png |

Sounds good, thanks Nathan.

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Monday, July 1, 2024 4:18 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Colin F. Peterson <CFP@ciresiconlin.com>;
Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna
C. Messerly <acm@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Roadfeldt.Christi@dorsey.com
**Subject:** Simha v. Mayo

Counsel,

Shortly, you will receive via secure file transfer a supplemental production from Mayo. The bates
range is Mayo_Leopold_0024511 – Mayo_Leopold_0024889. The password is: L5wm:od5ier&<Do,

Please let me know if you are unable to access the files.

-Nate

**Nathan J. Ebnet**
Partner
Pronouns: He/Him/His



Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
**P:** (612) 492-6753
**C:** (320) 266-7464
**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.*

| From: | Brandon E. Thompson |
|---|---|
| To: | Ebnet.Nathan@dorsey.com; Colin F. Peterson; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Cc: | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com |
| Subject: | RE: Simha v. Mayo |
| Date: | Monday, July 1, 2024 4:43:00 PM |
| Attachments: | image002.png |
| | image003.png |

Nathan, where is the responsive pleading that tells us which Bates numbers are responsive to which Request?

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6ᵗʰ St. | Suite 4600 | Minneapolis, MN 55402

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Monday, July 1, 2024 5:05 PM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Colin F. Peterson <CFP@ciresiconlin.com>; Maggie
M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C.
Messerly <acm@ciresiconlin.com>
**Cc:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Audley, Samuel
<Audley.Samuel@dorsey.com>; Marker, Alyssa <Marker.Alyssa@dorsey.com>; Roadfeldt, Christi
<Roadfeldt.Christi@dorsey.com>
**Subject:** RE: Simha v. Mayo

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Nathan, following up on my prior email; I am very curious about Mayo's response to
Request No. 15. I see no blood gas analyzer data in the documents that were
produced. We received an Excel spreadsheet that contains perfusion data, but as far
as I can tell there is no blood gas data on that spreadsheet.

Please clarify which document or documents Mayo contends are responsive to
Request No. 15.

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Tuesday, July 2, 2024 8:35 AM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Colin F. Peterson <CFP@ciresiconlin.com>;
Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna
C. Messerly <acm@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Roadfeldt.Christi@dorsey.com
**Subject:** RE: Simha v. Mayo

Brandon,

I am preparing this data for production. I expect it to be on the same timeline as the pathology
slides.

**-Nate Ebnet**

DORSEY + WHITNEY LLP
**P:** 612.492.6753

Ex. CC to Declaration of Brandon Thompson                                                    35

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | Ebnet,Nathan@dorsey.com; Colin F. Peterson; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| **Cc:** | brantingham,andrew@dorsey.com; Audley,Samuel@dorsey.com; Marker,Alyssa@dorsey.com; Roadfeldt,Christi@dorsey.com |
| **Subject:** | RE: Simha v. Mayo |
| **Date:** | Tuesday, July 2, 2024 9:38:00 AM |
| **Attachments:** | image001.png |
| | image002.png |

Nathan, with all respect I shouldn't have to keep asking for these things and I shouldn't be receiving this production piecemeal. I requested all this stuff from Mayo and Dorsey back on March 15. Months later Andrew indicated that I would have to send a formal discovery request, which is fine, and which I did. There is absolutely reason this information shouldn't have been already teed up and ready to go as soon as the protective order was signed. It is critically important to this case, and I need my experts to have an opportunity to analyze it prior to depositions. I should have it already.

I also note that I haven't received anything indicating which documents of your most recent production relate to which of our requests, and have not received a single document responsive to Requests 9, 17, 18, or 19.

With respect to Requests 9 and 17, I have to believe there was some written communication between Mayo personnel. I actually would assume there is quite a bit of it. I need that in plenty of time to review it with my experts and with my clients prior to depositions.

With respect to Request 18, presumably Mayo reviewed information before telling the Leopold family that the August 29 heart was suitable for transplant. I need to know what information that was so I can prepare for depositions.

With respect to Request 19, Mayo interposed an objection that "PHM" is not defined. You know full well that PHM refers to "predicted heart mass," and to remove all doubt the Request explicitly notes that we are seeking "calculations estimating Mr. Leopold's heart mass." The standard of care everywhere in the country requires a heart transplant recipient's PHM to be calculated as part of determining whether a donor heart is appropriate. I am entitled to have those calculations. If Mayo didn't conduct any calculations in this regard, of course, that's an entirely different issue. But either way, I should have this information by now.

I will be raising all of these issues with Judge Schultz this morning, so please be prepared to explain Mayo's position, why the production has been delayed, why I am getting this very basic information (which Mayo knew almost four months ago we were seeking) piecemeal, and what your timetable is for producing all of the documents responsive to our requests.

I look forward to seeing you soon.

Best,

Brandon


**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 Ciresi Conlin LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Friday, July 5, 2024 9:23 AM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Colin F. Peterson <CFP@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com
**Subject:** Simha v. Mayo

Counsel,

Later today, you will receive via secure file transfer a supplemental production from Mayo. The bates range is Mayo_Leopold_0024890 – Mayo_Leopold_0024915. The password is: L5wm:od5ier&<Do,

To view the pathology slides, you may need to download open-source viewing software. We use Aperio ImageScope by Leica Biosystems.

-Nate

**Nathan J. Ebnet**
Partner
Pronouns: He/Him/His



Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
**P:** (612) 492-6753
**C:** (320) 266-7464
**CONFIDENTIAL COMMUNICATION**
E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | Ebnet.Nathan@dorsey.com; Colin F. Peterson; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| **Cc:** | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com |
| **Subject:** | RE: Simha v. Mayo |
| **Date:** | Friday, July 5, 2024 2:09:00 PM |
| **Attachments:** | image002.png |
| | image003.png |

Nathan, thank you for this additional production. It looks like there still are no communications between Mayo personnel. In my experience it is routine for health care providers in this day and age to communicate via text message. Additionally, when you and I spoke on Tuesday you indicated there were "not many" responsive communications, and Mayo's response to our request for production does not take the position that there are no communications.

So… when can I expect to receive the communications?

I also still have no documents responsive to requests 18 and 19. Mayo's responses to those requests would indicate that there are responsive documents, but they simply had not yet been produced pending a protective order. I look forward to receiving either responsive documents on this, or an amended discovery pleading indicating that Mayo reviewed no written information prior to determining that the August 29 Donor Heart was suitable for Noah (that would be Request No. 18) and performed no written calculations whatsoever to calculate Noah's predicted heart mass (that would be Request No. 19).

Finally, I still have nothing from you indicating which documents of the hundreds of pages you've produced purport to respond to which requests.

Again, I should not have to repeatedly ask for this information. Please let me know when I can expect to receive the rest of the documents responsive to our first set of requests.

Best,

Brandon


**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791

E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6ᵗʰ St. | Suite 4600 | Minneapolis, MN 55402

---

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Tuesday, July 9, 2024 8:43 AM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Colin F. Peterson <CFP@ciresiconlin.com>;
Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna
C. Messerly <acm@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com
**Subject:** RE: Simha v. Mayo

Brandon,

We are proceeding with the production in the same manner I indicated we would in my prior emails
to you and during our conversation before the pretrial conference. We produced the pathology
slides and blood gas data last week. We intend to complete our production this week and I expect it
to include the responsive communications you reference below.

We have already produced documents that are responsive to requests 18 and 19, as indicated in our
written responses to those requests. I expect that any additional responsive information will be
produced this week.

Finally, the rules do not require Mayo to identify by Bates number the documents that are
responsive to each of Plaintiff's requests for production. If you have further questions regarding
Mayo's production as it relates to Plaintiff's specific requests, let's discuss once our production is
complete.

**-Nate Ebnet**

DORSEY ✦ WHITNEY LLP
**P:** 612.492.6753

| From: | Brandon E. Thompson |
|---|---|
| To: | Ebnet,Nathan@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Cc: | brantingham,andrew@dorsey.com; Audley,Samuel@dorsey.com; Marker,Alyssa@dorsey.com; Roadfeldt,Christi@dorsey.com; woolhouse.nicky@dorsey.com |
| Subject: | RE: Simha v. Mayo |
| Date: | Tuesday, July 9, 2024 11:59:00 AM |
| Attachments: | image001.png |
| | image002.png |

Nathan, I really hate discovery disputes. And I honestly don't understand the positions you are taking. Let me address each of these topics now, in my Rule 37 (and L.R. 37.1) attempt to resolve this dispute without court intervention.

### A.     Mayo's general position that the Rules do not require a party responding to document requests to indicate which documents are responsive to which request

Mayo has produced nearly 25,000 pages of documents in response to our requests for production. I've asked a number of times for Mayo to tell us specifically which of those documents it claims responds to which specific document request. Mayo has refused to do so. Today, you've clarified that Mayo's position is that "the rules do not require Mayo to identify by Bates number the documents that are responsive to each of Plaintiff's requests for production." You cite no authority for that contention, and it is baseless.

Rule 34(b)(2)(B) is literally titled "Responding to Each Item." It requires the party responding to a request for production to respond separately to each request. Look at the comments to the Rule for clarification on that. Every response to a request for production I can recall seeing (although perhaps Dorsey has done this to me in the past and I just don't recall it) indicates which documents actually purport to respond to which request.

I did a five-minute case law search after I reviewed your email, and it turned up a case you might find instructive: *Northland Radiology, Inc. v. Dozier*, Case No. 4:20-cv-11091 (E.D. Mich., April 22, 2021). In that case a plaintiff did exactly what Mayo is doing here (except with a much smaller number of documents). The Court granted a motion to compel, and awarded attorneys' fees against the offending party. Of particular relevance to our dispute, the Court noted that the party "was entitled to know which documents are responsive to which requests and should not have to sort through a 'document dump,' even a small one, to figure it out for themselves."

You also might want to take a look at *Chapman v. Hiland Operating, LLC*, Case No. 1:13-cv-052 (D.N.D., April 16, 2014); *Miller v. Cox Operating, LLC*, Civil Action No. 22-215 (E.D. La., April 28, 2023); *Illinois Nat'l Ins. Co. v. Cornett*, No. 1:20-cv-00008 (D.V.I., April 12, 2021); *Johnson v. Kraft Foods N. Am. Inc.*, 236 F.R.D. 535, 541 (D. Kan. 2006); *Realty Executives Int'l v. Devonshire*, No. CV-17-02671-PHX-DGC (D. Ariz. November 13, 2019); *Buster v. Board of Commissioners*, No. 231-cv-01208 MLG/JHR (June 27,

2023); and dozens of other cases that have addressed this exact issue and rejected the argument Mayo is making. I would also, incidentally, encourage you to review the admonishments in many of the above cases against interposing boilerplate general objections to every request like those Mayo has done in this case.

Mayo's position that it can produce nearly 25,000 pages of documents and just tell us to "figure out for yourselves" which documents respond to which request is patently ridiculous. I cannot imagine Judge Schultz is going to agree with Mayo's apparent position that a party can dump thousands of pages of documents and just say "here they are," without indicating which documents respond to which requests. Please send us a responsive pleading telling us which of the nearly 25,000 pages you've produced are responding to which request.

**B.      Mayo's responses to RFP 18 and 19**

RFP 18 and 19, as I outlined in my earlier emails, were very clear and narrowly focused. I have asked you when I can expect to receive documents responsive to those requests. Your email this morning claims that Mayo has "already produced documents that are responsive to requests 18 and 19, as indicated in our written responses to those requests."

That contention is inaccurate. Mayo did not produce documents responsive to those requests. Mayo "referred" us to the 24,510 pages of medical records it had produced in response to RFP #1, and also indicated that it might produce more documents once a protective order was signed. When I read that response I had a hard time understanding how any documents responsive to requests 18 or 19 would be proprietary such that they would be governed by a protective order, but apparently you are going to produce more documents this week. I will wait to receive those documents, but Mayo's current response of "the answer is somewhere in the 24,510 pages of Noah Leopold's medical records we produced, you go find it" is not appropriate and not allowed under the Rules.

After all, if Mayo is asserting in good faith that the answer is in those 24,510 pages of medical records, then someone from Mayo or Dorsey must have searched those records and found the answer. Because if no one searched the records and found documents responsive to Requests 18 and 19 in them, Mayo and Dorsey would be in breach of their discovery and ethical obligations by referring us to those 24,510 pages of records and telling us the answer is in there somewhere.

I look forward to immediately learning which of the 24,510 pages of medical records contains the documents responsive to requests 18 and 19.

**C.      Mayo's responses to RFPs 4, 5, and 8**

These three requests were narrowly tailored to determine which documents purport to document any informed consent discussions with Mr. Leopold. We anticipated that Mayo would try to refer us to Noah's medical records, and so the requests were explicitly drafted to explain that we were seeking production of the <u>exact pages</u> of the record, "separately from the tens of thousands of pages of medical records you will produce in response to Request #1," that Mayo claims document an informed consent discussion. We even underlined the "separately from the tens of thousands of pages" part so you couldn't miss it.

Given this explicit explanation, I was surprised and disappointed when Mayo simply referred us to the 24,510 pages of medical records. Here again, if you are asserting in good faith that there are documents responsive to these requests in the medical records then someone must have looked at the records and determined that that good faith assertion could be made. We are entitled to know which pages of the record Mayo claims document informed consent discussions. <u>Please provide those</u> specific <u>pages immediately</u>.

D.    Mayo's piecemeal document production

I first requested documents on this case informally from Mayo and Dorsey way back on March 15. At that time, Mayo and Dorsey were on notice of the information we would be seeking.

Months later, Andrew Brantingham told me Mayo would insist on formal discovery requests. I told him that was perfectly fine. Our requests for production were served on May 17. Responses were due on June 17. There were twenty-four separate requests, asking for very different information.

Mayo responded on June 17, but the only documents produced were Mr. Leopold's medical records – which we already had. Mayo asserted general, boilerplate objections to every single request. Mayo asserted frivolous objections to many requests, including feigning confusion about the definition of basic medical terms. Mayo asserted privilege objections, but provided no privilege log. And Mayo insisted that a protective order was required before it would produce anything other than Mr. Leopold's medical records.

Once I signed the protective order, Mayo still didn't produce additional documents. On June 25 you indicated that your "next production" would occur after the Court signed the protective order, and that Mayo had "additional documents" being "prepared for production." This was more than a week after the deadline for production; why those "additional documents" weren't already "prepared" was never explained – particularly given that Mayo and Dorsey had been on notice for more than three months by that point that those documents were integral to this

litigation and I was seeking them.

I pointed out that the pathology slides were not subject to a protective order, and asked when they would be produced. You said you were "working on it" and expected to produce them "in the near term." Why the slides were not prepared in the three months after I told Mayo and Dorsey I wanted them, or in the thirty days after we served our formal discovery request, was never explained.

I followed up with detailed emails outlining some of my concerns on June 27.

On July 1, Mayo produced an additional 378 pages of documents. As had happened with the initial document production, I received no explanation of what the documents were or which purported to respond to which of our requests. I also received no information from you as to what, if anything, was still to come. I followed up with more questions that afternoon, and pointed out that we still had received no responses to request #15.

You told me you were "preparing this data for production" and expected to produce is "on the same timeline as the pathology slides." You did not explain why the documents responsive to request 15 had not been "prepared for production" in March, April, May, or June.

On July 5 you produced yet more documents; with no explanation as to what they were or which requests they purported to respond to. Later that day I pointed out that we still hadn't received any communications between providers, nor had we received documents responsive to requests 18 and 19. That prompted your email of today.

As I've said a number of times before, there is nothing in the Rules that provides for this kind of piecemeal production. Thirty days should be more than enough time, with diligence, to put together meaningful responses to these kinds of limited document requests. And here, you've had way more than thirty days; I asked for these things nearly four months ago.

So this, to summarize, is what I'm asking Mayo to do by the end of this week:

1. Tell me precisely when I can expect to receive the rest of the responsive documents I haven't yet received;
2. Tell me if there are any other documents that are still being "prepared for production";
3. Provide a supplemental response to Plaintiff's First Set of Requests for Production detailing which specific documents are responsive to which specific request;

4. For those requests which Mayo claims it has been unable to locate any responsive documents, outline the reasonably diligent search that was conducted to try to locate documents;

5. For those requests that were the subject of a privilege objection, provide the required privilege log;

6. State with particularity whether any responsive materials are being withheld on the basis of any objection other than privilege.

All of these things should have been done already, so I am optimistic it won't be a problem to complete them by the end of the week. If any of them are a problem, please let me know ASAP so we can try to work through whatever issues remain and then seek prompt involvement of Judge Schultz on any issues we can't resolve. Obviously I want any and all issues with this first set of discovery to be resolved in time for the depositions.

Best,

Brandon


**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E:  BET@ciresiconlin.com

 Ciresi Conlin LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Friday, July 12, 2024 3:23 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Colin F. Peterson <CFP@ciresiconlin.com>;
Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna

C. Messerly <acm@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Roadfeldt.Christi@dorsey.com; Breymeier.Dianna@dorsey.com; woolhouse.nicky@dorsey.com
**Subject:** Simha v. Mayo

Counsel,

Please see the attached letter in response to your July 9 email.

Separately, you will receive via secure file transfer a supplemental production from Mayo. The Bates
range is Mayo_Leopold_0024916-0025089. The password to open the files is L5wm:od5ier&<Do,

You will also receive via messenger a flash drive containing videos and other monitoring data. The
password is the same as the one above.

-Nate

**Nathan J. Ebnet**
Partner
Pronouns: He/Him/His



Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
**P:** (612) 492-6753
**C:** (320) 266-7464
**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.
Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received
this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments,
including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.
Thank you.*



NATHAN J. EBNET
Partner
(612) 492-6753
ebnet.nathan@dorsey.com

July 12, 2024

**VIA ELECTRONIC MAIL**
Brandon E. Thompson
Ciresi Conlin LLP
225 South Sixth Street, Suite 4600
Minneapolis, MN 55402
BET@ciresiconlin.com

Re:     *Simha v. Mayo Clinic* – Discovery Issues

Counsel:

I write in response to your July 9, 2024 email regarding Mayo's document production. For the reasons set forth below, Mayo strongly disagrees with the assertions in your email. But at the outset, let me emphasize two realities that should resolve any current discovery dispute between the parties. First, as of today, you have received from Mayo all discoverable documents we are aware of that are responsive to Plaintiff's Requests. While it is possible that other documents may be located and produced before the close of discovery almost one year from now, we are not presently aware of additional responsive and discoverable information. Second, other than four peer review documents discussed *infra*, Mayo is not withholding any documents from its production. We have produced documents to you in the same format we have them in, i.e., as they are kept by Mayo in the usual course of business (as expressly authorized by Fed. R. Civ. P. 34(b)(2)(E)(i)).

In light of the above, we expect the parties to resume their focus on moving this dispute forward on the merits. Of course, if you would like to discuss anything following your review of Mayo's production, we welcome a call.

**I.     Mayo's Written Responses to Plaintiff's RFPs and Corresponding Productions**

You begin your email by asserting that Mayo produced "nearly 25,000 pages of documents" without "tell[ing] us which of those documents it claims respond to which specific document request." You then cite Fed. R. Civ. P. 34(b)(2)(B) and cases from outside this jurisdiction to support your demand that Mayo "send us a responsive pleading telling us which of the nearly 25,000 pages you've produced are responding to which request." Your assertions mischaracterize the relevant facts and applicable law.



July 12, 2024
Page 2

On the facts, it is inaccurate to characterize Mayo's production as a "document dump." As you know, of the 24,917 pages of documents that had been produced at the time of your email, 24,510 of them—98%—are Noah Leopold's medical records. You specifically requested those records in Request No. 1, and we produced them to you exactly as you requested; they are complete, organized, and paginated. Their breadth reflects the sophisticated medicine at issue in this case, as well as Mr. Leopold's extensive course of treatment at Mayo over the years. As a result, your criticisms of Mayo's production premised on the page count of Mr. Leopold's medical records are misleading and without merit.

Excluding Mr. Leopold's medical records, Mayo produced 407 pages of additional documents at the time of your email. Those pages were produced as 50 separate documents. Of those, 27 documents are the pathology slides or blood gas data you requested (responsive to Request Nos. 2 and 12, respectively). Of the remaining 23 documents, one is a 223-page policy document. *See* Mayo_Leopold_0024563-24785. In other words, the remaining 22 documents amount to a manageable 156 pages, further underscoring the fact that Mayo's production has not been a 25,000-page document dump, but instead an organized and appropriately labeled production of responsive documents.

On the law, your reliance on Fed. R. Civ. P. 34(b)(2)(B) is misplaced. That provision relates to a party's **written** responses to requests for production; it requires the responding party to respond to each "item or category" and state whether the responding party "will produce copies of documents or of electronically stored information." There is no requirement that a responding party identify the specific documents responsive to each request. The comments to the rule say the same thing. The most recent Committee Notes merely state that "[t]he response to the request must state the copies will be produced." Mayo has done exactly that; it has responded to each of your requests and indicated whether (or not) responsive documents would be produced.

More relevant to your misguided criticism of Mayo's production is Fed. R. Civ. P. 34(b)(2)(E)(i). That provision permits a responding party to either "produce documents as they are kept in the usual course of business" **or**, alternatively, the party "must organize and label them to correspond to the categories in the request." Mayo produced documents under the first clause of Rule 34(b)(2)(E)(i), i.e., as they are kept in the usual course of business. As a result, Mayo's written responses to Plaintiff's Requests, and Mayo's corresponding productions, are compliant with the rules.

The case law you cite is inapposite. *Northland Radiology, Inc. v. Dozier* involved a responding party that had entirely failed to provide timely, written responses to requests for production. 2021 U.S. Dist. LEXIS 77695, at *3-4 (E.D. Mich. Apr. 22, 2021). When the



July 12, 2024
Page 3

responding party attempted to excuse its error over two months after responses were due, it
relied on an email and letter, submissions that are plainly not in compliance with Rule 34.
Moreover, it does not appear that any documents were produced prior to the motion to compel.
In those circumstances, it is not surprising that the court in *Northland* ordered a more exacting
standard for production than is ordinarily required under the rules. But none of the
circumstances from *Northland* are present in this case.

      At your invitation, I reviewed the six additional cases you cite in your email. None
support your position. In *Chapman v. Hiland Operating, LLC*, 2014 U.S. Dist. LEXIS 54318, at *9-10
(D.N.D. Apr. 16, 2014), the responding party was required to submit for *in camera* inspection
certain tax documents that had not previously been produced. Here, Mayo has produced all
discoverable and responsive documents in its possession, custody, or control. *Miller v. Cox
Operating, LLC*, 2023 U.S. Dist LEXIS 74051, at *8-9 (E.D. La. Apr. 27, 2023), involved a
responding party that had been subject to a prior motion to compel and a prior motion for
sanctions but continued to ignore the court's instructions. This has not happened here. In *Illinois
Nat'l Ins. Co. v. Cornett*, 2021 U.S. Dist. LEXIS 70294, at *20-23 (D.V.I. Apr. 12, 2021), the court
determined that the responding party had elected to produce documents pursuant to the
second clause of Fed. R. Civ. P. 24(b)(2)(E), i.e., organized and labeled to correspond to the
categories in the request. As stated above, Mayo produced documents under the first clause of
the rule, i.e., as they are kept in the usual course of business. In *Johnson v. Kraft Foods N. Am.,
Inc.*, 236 F.R.D. 535, 540 (June 16, 2006), the court recognized that the purpose of Rule 34(b) is to
prevent parties from deliberately mixing critical documents with others in the hope of
obscuring significance. There has been no such gamesmanship here; each document produced
by Mayo has been requested by Plaintiff. The final page count of Mayo's production will be a
reflection of the expansiveness of Plaintiff's Requests – nothing more. In *Realty Execs. Int'l Servs.
LLC v. Devonshire W. Can. Ltd.*, 2019 U.S. Dist. LEXIS 196422, at *6-7 (D. Ariz. Nov. 13, 2019), the
responding party failed to indicate whether documents would be produced in response to any
request and whether any documents had been withheld. Mayo's written responses do not suffer
from similar defects. And finally, in *Buster v. Bd. of Cnty. Comm'rs for Lincoln Cnty.*, 2023 U.S.
Dist. LEXIS 110353, at *16 (D.N.M. June 27, 2023), the court merely required the responding
party to produce responsive documents by a certain date. Again, Mayo has already produced
the responsive and discoverable documents in its possession, custody, or control.

      To be clear, and as I stated in my earlier email to you, Mayo's position is that, absent a
court order, the rules do not require Mayo to Bates number the documents that are
responsive to each of Plaintiff's Requests. As just one example of the case law that supports
Mayo's position, please see Judge Brisbois's order in *Farmers Ins. Exch. v. West*, 2012 U.S. Dist.
LEXIS 200518, at *37 (D. Minn. Sept. 21, 2012) (recognizing that if a party produces documents
as they are kept in the usual course of business, "the producing party is not, as Defendants'



July 12, 2024
Page 4

motion impliedly suggests, required to indicate by Bates number which documents within the produced file correspond to which request, and Defendants have offered no authority to require Plaintiffs to undertake this task"). What is required, and what Mayo has provided, is a production that allows Plaintiff to readily ascertain responsive documents, to prepare for depositions, and to consult with her experts on the merits.

II.     RFPs 18 and 19

You next criticize Mayo's responses to Request Nos. 18 and 19 on the ground that both refer to Mr. Leopold's medical records. You also complain about the timing of a supplemental production of documents responsive to these Requests.

Regarding the latter, your complaint is moot. As I stated we would prior to the pretrial conference on July 2, and in the numerous emails we exchanged since then, Mayo completed its supplemental production today. In that production are records regarding the donor heart, many or all of which you likely already have in your possession pursuant to Judge Lisa R. Hayne's February 2, 2024 Order in Case No. 55-CV-23-7686. You now have the documents Mayo is aware of on these topics (to the extent you did not already).

Regarding Mayo's reference to Mr. Leopold's medical records, we directed you there because those records include discussions of the donor heart and its size. It is not difficult or burdensome to locate the responsive records. As you know, Mr. Leopold's records are organized chronologically and searchable. And a text search for the August 29-30, 2023 Operative Note reveals information responsive to Request Nos. 18 and 19. *See* Mayo_Leopold_0002131 ("Donor larger than recipient. However, we adjusted the surgical sutures and opened the posterior and left side pericardium to make it fit with good result.").

Regarding predicted heart mass ("PHM") calculations specifically, we understand that Mayo surgeons sometimes, but not always calculate and record those values, which are just one parameter a surgeon may use to assess whether a donor heart is of a suitable size. We understand Mayo surgeons in this case did not record PHM calculations in Mr. Leopold's medical records (although there are discussions of donor heart suitability and size in the medical records, hence our reference to them in response to Request Nos. 18 and 19). We are not aware of other documents that contain PHM calculations. Dr. Villavicencio can explain his suitability determinations in more detail during his deposition in August.

To summarize, Mayo complied with its discovery obligations by producing documents responsive to Requests Nos. 18 and 19 as those documents are kept in the usual course of business.



July 12, 2024
Page 5

### III.     RFPs 4, 5, and 8

You next criticize Mayo's responses to Request Nos. 4, 5, and 8 on the ground that Mayo did not extract and separately produce informed consent documentation from Mr. Leopold's medical records. Similar to your other criticisms, your position regarding these Requests is in conflict with Rule 34.

Rule 34 expressly allows a party to produce documents as they are kept in the usual course of business. Mayo's responses to Request Nos. 4, 5, and 8 make clear that informed consent documentation exists only as a part of Mr. Leopold's medical records. Mayo stated that it is not aware of any responsive information outside of those records. As a result, and consistent with Rule 34, Mayo produced responsive information as it is kept in the usual course of business, i.e., by producing Mr. Leopold's medical records. The fact that you underlined your demand that Mayo create and compile a new informed consent document, "separately from the . . . medical records," and the fact that you were "surprised and disappointed" when Mayo did not, does not and cannot overcome Rule 34's plain language. *See also Farmers Ins. Exch.*, 2012 U.S. Dist. LEXIS 200518, at *13 ("[I]t is axiomatic that no party is required to create documents in response to a Rule 34 request for production of documents.").

Also worth noting is the ease of identifying the informed consent documentation in Mr. Leopold's medical records. For example, a text search for "consented" immediately locates Mayo_Leopold_0001619, i.e., documentation of a Mayo provider obtaining consent from Mr. Leopold to proceed with the August 29 transplant. We trust that you and your team can perform text searches to quickly ascertain those medical records that reference informed consent issues.

### IV.     The Timing of Mayo's Production

Although your complaints regarding the timing of Mayo's production are largely immaterial given today's production, a few points are worth emphasizing to avoid further disputes on similar grounds.

First, your informal request for documents months before Plaintiff issued her Rule 34 Requests has no bearing on whether Mayo's production is timely.

Second, Mayo's written responses to Plaintiff's actual Requests were timely. The deadline to provide written responses to Plaintiff's Requests, issued on May 17, was June 17. Fed. R. Civ. P. 34 (b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served . . . ."). As you acknowledge, Mayo provided written



July 12, 2024
Page 6

responses on that date, as well as Mr. Leopold's medical records and CDs containing medical imaging.

Third, Mayo's subsequent productions were reasonable and timely. Mayo indicated in its written responses that it would produce the remaining responsive information following entry of a protective order. When the Court entered the protective order on June 27, Mayo made three subsequent productions; one on July 1, one on July 5, and one today, July 12.

There is no requirement under the rules that a document production be complete within 30 days of serving requests for production. Instead, Rule 34 requires reasonableness; a production may be completed at a "reasonable time specified in the response." Fed. R. Civ. P. 34 (b)(2)(B). Likewise, the Committee Notes recognize that it may be "necessary to make [a] production in stages." It is for this reason that litigants routinely make rolling productions, particularly in cases like this one that involve sophisticated issues, documents generated by non-parties, and protected health and donor information governed by HIPAA. Indeed, numerous courts have approved reasonable rolling productions, including the *Buster* case you cite in your July 9 email, so long as there is a reasonable end date for production. *See* 2023 U.S. Dist. LEXIS 110353, at *16. There can be no dispute that the end date of Mayo's production—a mere 25 days after Mayo provided its written responses—is reasonable under the rules.

The reasonableness of Mayo's rolling production is further reinforced by the case schedule the parties agreed to in their joint Rule 26(f) report. Fact discovery does not close in this matter until May 9, 2025, and, Mayo's production is complete a month prior to the first deposition and five months before your expert disclosure deadline.

For all these reasons, Mayo's productions have been reasonable and timely under the rules. During our production process, we have been transparent with you regarding the expected timeline for Mayo's productions. We accelerated the production of documents that you indicated were of particular importance for your experts, such as the pathology slides and blood gas data. And we have met every deadline we have communicated to you. We will continue to do so.

**V.      Reasonably Diligent Search, Privilege Log, and Peer Review Documents**

You conclude your email with six requests. Items 1-3 and 6 are addressed *supra*. The other two are addressed here.

You ask Mayo to describe the reasonably diligent search it undertook to locate documents in response to Requests for which "Mayo claims it has been unable to locate any responsive documents." But it is well settled that your request for "discovery on discovery" "is



July 12, 2024
Page 7

generally not permitted." *Mays v. Sherburne Cty. Jail,* 2021 U.S. Dist. LEXIS 147824, at *14-15 (D. Minn. Aug. 6, 2021). Indeed, courts closely scrutinize requests for discovery on discovery "in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Speed RMG Partners, LLC v. Artic Cat Sales Inc.,* 2021 U.S. Dist. LEXIS 218618, at *26 (D. Minn. June 14, 2021) (internal citation and quotation marks omitted). None of your baseless complaints regarding Mayo's production warrant reconsideration of the prohibition on discovery on discovery, particularly because the parties agreed in their joint Rule 26(f) report that "special mechanisms to address electronic discovery" were not needed in this case.

Let me emphasize here that if you believe Mayo possesses responsive information that has not yet been produced, please let us know immediately and provide a factual basis for your belief. Mayo takes its discovery obligations seriously; if there is a reasonable factual basis to believe that responsive and discoverable information exists, we will search for it. But Mayo otherwise rejects your unnecessarily costly and time-consuming request to engage in discovery on discovery, which amounts to little more than an effort to manufacture disputes to unnecessarily consume the parties' and the Court's time and resources.

Finally, you request a privilege log "[f]or those requests that were the subject of a privilege objection." As a general matter, we agree that a mutual exchange of privilege logs is appropriate in this case. It is our practice to meet and confer with counsel to discuss the necessary components for a privilege log, and for efficiency reasons, we typically engage in such discussions once all parties have completed their productions. But if you prefer to do so sooner, please let us know.

Regarding the likely contents of Mayo's privilege log, we are withholding four documents from Mayo's production. Each is being withheld on the basis of the statutory peer review protection, Minn. Stat. § 145.61-67. At this time, no other responsive documents are being withheld on the basis of any privilege objection.

We expect that the foregoing information resolves any purported concerns raised in your July 9 email. As has always been the case, if you have further questions regarding Mayo's productions, please let us know.



July 12, 2024
Page 8

Very truly yours,

Nathan J. Ebnet

CC: All Counsel of Record (via email)

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | Ebnet.Nathan@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| **Cc:** | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; Breymeier.Dianna@dorsey.com; woolhouse.nicky@dorsey.com |
| **Subject:** | RE: Simha v. Mayo |
| **Date:** | Saturday, July 13, 2024 10:40:00 AM |
| **Attachments:** | image002.png |
| | image003.png |

Nate, thank you for your letter. We are continuing to review Mayo's discovery production, and will let you know if the issues have been resolved.

In reviewing the communications that were produced on Friday, we've identified a number of individuals who appear to have been intimately involved in the transplant who were not previously identified and who either do not appear in the record at all or whose significant role is not clear from the record. These individuals include Adam Skow, Danielle Fay, Megan Osterhaus, and Alex Reynolds. I would like to depose these four individuals, and if possible I'd like to add them to our August schedule. Ms. Fay is particularly important, given that the text message conversations you've produced appear to come from her phone.

Please let me know asap about Ms. Fay and the other three witnesses. We also still need to find a time for a zoom deposition of Dr. Chauhan, but that is not as high of a priority as these four.

Thanks,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

| From: | Brandon E. Thompson |
|---|---|
| To: | Ebnet.Nathan@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Cc: | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; Breymeier.Dianna@dorsey.com; woolhouse.nicky@dorsey.com |
| Subject: | RE: Simha v. Mayo |
| Date: | Saturday, July 13, 2024 1:41:00 PM |
| Attachments: | image001.png |
| | image002.png |

An additional follow-up: you produced, at Mayo_Leopold_0025057, a one-page document that is indecipherable. Please tell me what that document is.

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | brantingham.andrew@dorsey.com; Ebnet.Nathan@dorsey.com; Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com; Marker.Alyssa@dorsey.com |
| **Cc:** | Anna C. Messerly; Maggie M. Palmisano; Pamela A. Keenan |
| **Subject:** | Simha v. Mayo - discovery follow-ups |
| **Date:** | Friday, July 19, 2024 10:36:00 AM |
| **Attachments:** | image001.png |

Andrew and Nate, I'm writing to follow up on the list of discovery issues for us to address. I don't want these to get lost going into the weekend, so please forgive the additional follow-up.

First, I'm waiting for a response to my email from July 13 (and follow up yesterday) on the unidentified (and incomprehensible) document Mayo produced at Mayo_Leopold_0025057. Please identify this document.

Second, I'm waiting for a response to my email from July 14 (and follow up yesterday) regarding Mayo's confidentiality designations. Please let me know your thoughts on this asap.

Third, I'm waiting to hear back from you on Danielle Fay. Ms. Fay appears to have been one of the individuals who was on the OCS run bringing back the Donor heart. She clearly is an individual likely to have discoverable information, and should have been identified in Mayo's initial disclosures. Mayo's initial disclosures pointed us to Noah Leopold's medical records to identify such individuals, but Ms. Fay appears nowhere in Noah's medical records. Had I known about Ms. Fay's existence and her role in this case, she would have been one of the first people I would have wanted to depose. We have plenty of time to add her to our slate of depositions, as I outlined in my email on Wednesday. Please let me know which of those days work for Ms. Fay.

Thank you for your attention to these matters.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Friday, July 19, 2024 1:16 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; brantingham.andrew@dorsey.com;
Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com; Marker.Alyssa@dorsey.com
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>;
Pamela A. Keenan <PAK@ciresiconlin.com>
**Subject:** RE: Simha v. Mayo - discovery follow-ups

Brandon,

Below is our response to your July 13 and July 14 emails. In general, we are open to
revisiting confidentiality designations if necessary. However, I am not tracking the
importance you are placing on this issue, or your request to "get this ironed out prior
to the depos." Pursuant to the Protective Order, a document designated as
"confidential" may be used only in this action, but otherwise, confidential
information may be shared between and among attorneys and their teams, experts,
the court, and the parties (including next-of-kin, at your request). Confidential
information can be introduced during deposition, and all parties (including Mayo
employees that are being deposed) are entitled to view confidential information in
connection with this action. Further, the Protective Order does not authorize
confidential information to be filed under seal, and instead directs the parties to the
local rule on this issue. In our view, these terms allow the parties to freely pursue
their claims and defenses regardless of whether a document is designated as
confidential. In light of the foregoing, we can't perceive any way in which the current
confidentiality designations impede your ability to conduct discovery or otherwise
prosecute your case. If there is some other reason you are interested in confidentiality
designations, please let us know and we'll work through it.

Mayo_Leopold_0025057: You indicate this one-page document is "indecipherable."
When I look at the as-produced document, I see a table that lists organs that may be
available for transplant (with donor ids redacted). For additional context, this is the
same information that is provided on the second page of Mayo_Leopold_0025055.

Mayo_Leopold_0024545-0024552 and Mayo_Leopold_0024801-0024808: You indicate
these are publicly-available brochures. We have no objection to removing the
confidentiality designations from these documents.

Mayo_Leopold_0024562: the Protective Order not only applies to PHI, but also to

confidential or proprietary information. I understand that this "Organ Procurement" form is an internal Mayo form that is not generally available to the public, so we've designated it as confidential so that it "may be used only in this action," as set forth in the Protective Order (§ 3(a)). As stated above, if there is some other issue we're not perceiving that is created by this document's confidentiality designation, please let us know and we'll consider it.

<u>Mayo_Leopold_0024553 and Mayo_Leopold_0024890</u>: these documents reflect an individual's medical data (i.e., that of the donor heart), and are not publicly available, so we've designated them as confidential so that they may be used only in this action.

<u>Mayo_Leopold_0024512</u>: similar to the above, this picture of the donor heart and related equipment is not publicly available and should be used only in this action.

<u>Mayo_Leopold_0025073-0025087</u>: these text messages, collected from individuals' cell phones and related to patient care, are by definition confidential. They are not publicly available and should not be used or shared outside of this litigation. Our agreement to produce them was contingent on entry of a mutually-agreeable protective order, as we stated in response to Request No. 9. And the case law supports our designation; protective orders and confidentiality designations are the routine method of dealing with sensitive/private text messages that may be relevant. *See, e.g., Bloomer v. Word Network Operating Co., Inc.*, 2023 U.S. Dist. LEXIS 222186, at *23 (E.D. Mich. Dec. 8, 2023) ("[T]he fact that the Court is permitting the discovery at issue does not necessarily mean that such messages are subject to broad public disclosure. Indeed, given the sensitive nature of the text messages requested, it seems appropriate for all non-privileged documents responsive to RFP No. 10 to be produced subject to the terms of a mutually agreeable protective order.").

Regarding the deposition of Danielle Fay, we are working to coordinate her schedule with the intention of including her in the upcoming deposition block in August if possible. We understand she is out until next week; as soon as we're able to confirm her availability, we will let you know.

-Nate Ebnet

DORSEY + WHITNEY LLP
P: 612.492.6753

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | Ebner,Nathan@dorsey.com; brantingham.andrew@dorsey.com; Audley,Samuel@dorsey.com; Roadfeldt,Christi@dorsey.com; Marker,Alyssa@dorsey.com |
| **Cc:** | Anna C. Messerly; Maggie M. Palmisano; Pamela A. Keenan |
| **Subject:** | RE: Simha v. Mayo - discovery follow-ups |
| **Date:** | Sunday, July 21, 2024 6:11:00 PM |
| **Attachments:** | image001.png |

Nate, thanks for your response. We will look forward to hearing from you on Ms. Fay.

With respect to Mayo_Leopold_0025057, I'm glad you know what it is. I'm not surprised that you would, because you are one of the team of lawyers who represents the party that is producing the document and you would know what it is, because you would have to know what it is (and which of our RFPs it is responsive to) in order to decide whether to produce it. You have the benefit of talking with the people at Mayo. I don't.

Would you be willing to tell me what the column titled "OPO" means, what the abbreviations in that column stand for, what the column titled "initial sequence" means, what those abbreviations are, and what the justification is for redacting the "donor ID" column given that this document is already designated as confidential under the protective order? That will save a lot of unnecessary wasted time in depositions.

With respect to the overall use of the confidentiality designation, I think we have a global disagreement on philosophy. In my view, unless there are compelling reasons counseling otherwise the proceedings of the civil justice system should be public. I don't think a corporation should have the ability to unilaterally decide to shield any information is wants from the public view, just because it would prefer that information not be publicized. I think more than 200 years of common law and First Amendment jurisprudence backs my view on this.

The protective order entered in this case allows a document to be designated confidential if it contains "confidential or proprietary information." The burden is on Mayo to establish that the documents it has designated as "confidential" actually warrant such a designation. The explanations you provide below to justify that designation mostly center around the fact that a document "is not publicly available." In my view, that is not even close to the relevant test. If Mayo's position is that literally anything that "is not publicly available" warrants a confidential designation, such that the documents cannot be disclosed and cannot be filed without jumping through the hoops of the protective order and LR 5.6, then we have a dispute that will need to go to Magistrate Schultz.

Please let me know if you have any further justification for the confidentiality

designations other than that which you've outlined below.

Finally, I note that the issue of the informed consent documents (which I left out of my most recent emails) is still hanging out there. My understanding is that Mayo's position is that it is not required to actually tell us which documents it claims evidence Mayo providers having an informed consent discussion with Mr. Leopold. Your July 12 letter directs us to perform a text search for such documents, and suggests the word "consented" as one such search term. But that suggestion only highlights the problem. My team and I can guess what words the Mayo providers used in their documentation. We can guess which providers had consent discussions with Mr. Leopold. But we may very well guess wrong. I might not foresee the exact wording one of the Mayo providers uses. And the point of discovery is to eliminate guesswork, and to allow one party to require the other party to disclose what it knows about relevant topics.

Let me try to put it really simply: your client knows where the informed consent discussions are documented. We don't – even though, as you point out, we can guess. When you have relevant information that we don't have, the discovery rules require you to provide that information if we ask. We've asked you to tell us. You're refusing. That's a problem.

I frankly don't understand why you don't just give us this information. I'm not asking you to create a new document. I'm asking you to tell me where, in the 25,000 pages of medical records you've provided, we can find the answer to a very straightforward and relevant question.

Maybe you're planning to do this in response to Interrogatory No. 1. But I am preparing to depose the providers in a few weeks. Informed consent is one of the central issues in this case. Please let me know asap whether you're really planning to withhold this information so I can make an appropriate motion in time to keep things on track.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | brantingham.andrew@dorsey.com; ebnet.nathan@dorsey.com; Marker.Alyssa@dorsey.com; Roudfeldt.Christi@dorsey.com; Audley.Samuel@dorsey.com |
| **Cc:** | Maggie M. Palmisano; Anna C. Messerly; Pamela A. Keenan |
| **Subject:** | Simha v. Mayo - July 12 flash drive production and 30(b)(6) deposition |
| **Date:** | Monday, July 22, 2024 12:38:00 PM |
| **Attachments:** | image001.png |

Counsel, we have been reviewing the flash drive that was produced by mail on July 12. As has been the case with the majority of your production on this case, we are left to simply guess what it is. The drive was accompanied by a cryptic letter from a paralegal that simply says "enclosed is a flash drive containing information related to Mr. Leopold." There is no indication on the letter or the flash drive that the information is confidential (at least not that I can see), so I have no idea why it wasn't produced until July 12 – nearly a month after the deadline for responding to our RFPs.

We were able to open the hundreds of video files. I have no clue where these came from, or why there were taken. They appear to be continuous video of Mr. Leopold in his ICU bed after the disastrous failed transplant attempt, but the family was unaware that there was constant video being taken so this is very surprising.

There are what appears to be two EEGs on the flash drive, which we were only able to open after contacting our tech support vendor and having them help us download a program that opened it. There are about 489 other files on the drive, however, that we cannot open. Not only can we not open them, we have no idea what they are, where they came from, or which of our RFPs they supposedly respond to.

You've already made it clear that you are not willing to be straightforward about what you are producing, so I'm sure you will not give us additional information about the contents of this flash drive. Instead, I'm simply going to notice a 30(b)(6) deposition to get the answers. We need to get this deposition completed prior to our August 12-14 slate so I can figure out if there is information on this flash drive I need to discuss with those fact witnesses. I'm happy to conduct the deposition by Zoom to facilitate this schedule. I can take the deposition on July 30 or 31. I can also take it on August 1, 2, 5, 6, 7, 8, or 9.

In order to allow you to determine who Mayo's corporate rep(s) will be for this deposition, here are the topics that will be on the notice:

1. An explanation of what each file is on the flash drive that Mayo produced on July 12, 2024;
2. With respect to each of the video files on the July 12, 2024 flash drive, an explanation for how and why the video was taken;

3. With respect to the files listed with a "file type" of AFI, AF2, AR, ENT, EPO, EPR, ERD, ETC, INDX, LAY, MG2, MMX, MWTP, OLD, RAW, SD4, SNC, STC, VT2, VTC, and XML – an explanation not only of what the files are, but what program(s) are needed in order to open them;

Please let me know which of the 9 dates I've listed above will work for you to hold this 30(b)(6) deposition. If you would prefer provide this information in writing prior to the August 12-14 depositions, I would be happy to accept that in lieu of a corporate deposition.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Brandon E. Thompson
**Sent:** Wednesday, July 24, 2024 2:03 PM
**To:** Terianne Bender <Terianne_Bender@mnd.uscourts.gov>
**Cc:** brantingham.andrew@dorsey.com; Ebnet.Nathan@dorsey.com; Pamela A. Keenan
<PAK@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>;
Audley.Samuel@dorsey.com; Anna C. Messerly <acm@ciresiconlin.com>
**Subject:** Simha v. Mayo Clinic - 24-CV-01097-JRT-DTS

Good afternoon Ms. Bender, I'm writing to obtain a hearing date for a
motion on several discovery-related issues the parties have been unable to
iron out. We have a slate of depositions coming up on August 12, 13, and
14 that are impacted by the motion, so if there is any way to fit a hearing
in next week or the week after that would be wonderful.

Thank you for your assistance.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

<image001.png>

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

On Jul 24, 2024, at 4:44 PM, brantingham.andrew@dorsey.com wrote:


Brandon,

In my experience, as a matter of professional courtesy if not express law,
attorneys customarily inform opposing counsel of the disputes they intend to
raise with the Court before invoking the Court's processes. You have
communicated a wide range of complaints in the past several weeks, and we
have duly responded. You raised additional issues as recently as Monday, and
before affording us even a reasonable opportunity to respond, you have asked
for a hearing to address what you have only described as "several discovery-
related issues." We cannot fairly evaluate which dispute resolution process to
follow until we know what disputes are at issue. Please pay us the courtesy of
identifying what topics you want to discuss with the Court, and we will then
let you and the Court know which process we will follow.


**Andrew Brantingham**

DORSEY & WHITNEY LLP
P: 612.492.6623




| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | brantingham.andrew@dorsey.com |
| **Cc:** | Ebnet.Nathan@dorsey.com; Pamela A. Keenan; Maggie M. Palmisano; Audley.Samuel@dorsey.com; Anna C. Messerly |
| **Subject:** | Re: Simha v. Mayo Clinic - 24-CV-01097-JRT-DTS |
| **Date:** | Wednesday, July 24, 2024 5:01:43 PM |
| **Attachments:** | image001.png |

Fair enough, I thought I had outlined them before. But here are the things I think need to be
addressed:

1. Mayo's unwillingness to identify which documents are responsive to which RFP;
2. Mayo's unwillingness to identify the parts of the record it claims evidence consent
discussions;
3. Mayo's use of the 'confidential' designation;
4. The 30(b)(6) issues I outlined in Monday.

I think this is it, but I'm not at my computer to confirm.

I continue to hope we can work through these and resolve them without the court. With the
depos right around the corner, though, I wanted to have something on the calendar to get it
straightened out in case we can't do it on our own.

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Wednesday, July 24, 2024 5:11 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; brantingham.andrew@dorsey.com;
Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com; Marker.Alyssa@dorsey.com
**Cc:** Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>;
Pamela A. Keenan <PAK@ciresiconlin.com>
**Subject:** RE: Simha v. Mayo - discovery follow-ups

Brandon,

Below is our response to the substantive issues raised in your July 21 and July 22 emails. Moving
forward, it will be more productive and efficient for your discovery emails to focus on the topics
actually in dispute, rather than unsupported criticisms and assumptions about Mayo's discovery
positions. If you present your concerns in a reasonable manner, I'm confident we can resolve most
of them collaboratively. And for those that we can't, we'll be in a better position to elevate them to
the Judge.

**Deposition of Ms. Fay**: We've made Ms. Fay available for deposition at your request and you've
noticed her deposition for the August deposition block. This issue is resolved.

**Mayo_Leopold_0025057**: "OPO" stands for "organ procurement organization." The abbreviations
under OPO are various organ procurement organizations, as follows.

1.    ILIP: Gift of Hope Organ & Tissue Donor Network
2.    UTOP: DonorConnect
3.    CASD: Lifesharing - A Donate Life Organization
4.    MIOP: Gift of Life Michigan
5.    NYRT: LiveOnNY
6.    NVLV: Nevada Donor Network
7.    NCNC: HonorBridge
8.    OHOV: LifeCenter Organ Donor Network
9.    TXSA: Texas Organ Sharing Alliance
10.   OKOP: LifeShare Transplant Donor Services of Oklahoma
11.   MAOB: New England Organ Bank
12.   PATF: Center for Organ Recovery and Education
13.   NJTO: New Jersey Organ and Tissue Sharing Network OPO
14.   OHLB: Lifebanc
15.   WIDN: Versiti Wisconsin, Inc

We've redacted the "Donor ID" column because HIPAA requires us to do so. As stated in 45 C.F.R. §
164.514(b)(2)(R), Mayo must redact any "unique identifying number, characteristic, or code" when
disclosing protected health information. Redactions are required even if a document is marked as
confidential because, as I've previously stated, the Protective Order in this case does not separately
authorize confidential documents to be filed under seal. Perhaps more to the point, you've not
indicated how or why Mayo's HIPAA-compliant redactions of the Donor ID column—including
redactions that cover organ donors that have nothing to do with this case—impact your ability to
proceed with discovery or prosecute your claims.

I am investigating the "Initial Sequence" column and will follow-up on this issue when I know more.

**Confidentiality Designations**: You've relayed your philosophy regarding confidentiality designations, including that "proceedings of the civil justice system should be public." To be clear, Mayo's confidentiality designations do not interfere in any way with the public nature of court proceedings, nor do they impede your ability to proceed with depositions. At most, you'd be required (at some point in the future with regard to some filing you've not identified) to file confidential documents temporarily under seal per the local rules, and then it would be Mayo's burden to establish grounds to keep them sealed. These are not burdensome "hoops," but instead the exact processes set forth in the local rules. Outside of these well-established processes, you've not identified what you intend to do with these confidential documents that is hindered by them being designated as such. And you've not cited any authority demonstrating that Mayo's designations are otherwise improper. Mayo's position is that non-public medical information that relates to patient care, including the donor, are appropriately designated as confidential. *See, e.g., In re NHL Players' Concussion Injury Litig.*, 120 f. Supp. 3d 942, 959 (D. Minn. 2015) (recognizing that patient medical information is "highly confidential" and must be given "layers of protection from public disclosure" even if the information is "highly relevant"). Mayo stands by its designations.

**Informed Consent**: Mayo's position on the informed consent issue is set forth in my July 12 letter. In your July 21 email, you accuse Mayo of "withhold[ing]" informed consent information, but that is inaccurate. Instead, we've produced to you all the informed consent documentation that we are aware of as it is kept by Mayo in the usual course of business, i.e., as part of Mr. Leopold's medical records. Within the medical records, the informed consent forms are identifiable on their face. In other words, Mayo has done exactly what is required by Rule 34. *Ball v. Commuter R.R.*, 2024 U.S. Dist. LEXIS 47825, at *31-32 (S.D.N.Y. Mar. 13, 2024) ("Rule 34 of the Federal Rules of Civil Procedure does not require the producing party to identify in its written responses to each document request exactly which page is responsive to each request.") (internal citation and quotations omitted). You've not identified any authority to the contrary. Mayo stands by its position on this issue.

**USB Drive and Requested 30(b)(6) Deposition**: Plaintiff's Request No. 10 seeks all other records related to the care at issue in this case, including "recordings of any kind relating to Mr. Leopold." The usb drive contains recordings, so we've produced them to you as they are kept by Mayo in the usual course of business.

Because we are not able to directly mark the files on the usb drive to designate them as confidential, we opted instead to include with our production a photocopy of the physical usb drive, label it as Mayo_Leopold_0025089 and as confidential, and thereby designate all documents on the drive as confidential.

I'm glad to hear that you've been able to view the two EEGs on the usb drive, as well as the video. As I've offered repeatedly, if you have difficulty accessing any of the files we have produced to you, please let us know and we'll work through it.

The EEGs and videos were taken as part of the continuous EEG monitoring of Mr. Leopold that was ordered following a neuro ICU consult. *See* Mayo_Leopold_0001550.

Ex. CC to Declaration of Brandon Thompson                                                67

Finally, I've confirmed that the two EEGs and the videos on the usb drive are the only viewable information on the drive. The other 21 file types support the programs/data that ultimately allow the user to view the EEGs and videos. The other 21 file types do not contain any independent information beyond the EEGs and videos.

I expect that the above information resolves any purported need to conduct the 30(b)(6) deposition raised in your July 22 email.

-Nate Ebnet

DORSEY + WHITNEY LLP
**P:** 612.492.6753

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | Ebnet, Nathan@dorsey.com; brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com; Marker.Alyssa@dorsey.com |
| **Cc:** | Anna C. Messerly; Maggie M. Palmisano; Pamela A. Keenan |
| **Subject:** | RE: Simha v. Mayo - discovery follow-ups |
| **Date:** | Thursday, July 25, 2024 10:50:00 AM |
| **Attachments:** | image001.png |

Nate, thanks for your response. I disagree with your suggestion that I haven't "presented my concerns in a reasonable manner," or with any suggestion that I'm not also trying to work collaboratively to resolve things. I also don't think there is any basis for suggesting that I am making an "unsupported criticism or assumption" about Mayo's discovery positions. You are free to disagree with my criticisms, but that's a different matter.

In any event, again, I appreciate your responses. So let's move forward. Easy stuff first.

The additional information you've given on the USB drive and Mayo_Leopold_0025057 answers my questions, thank you. You are correct that there is no reason for a 30(b)(6) deposition.

On confidentiality, I absolutely disagree with your position. It doesn't seem like further discussion on that issue is going to be fruitful. I will decide if and when this needs to be sorted out with the Court.

With respect to Mayo's refusal to tell us which documents are responsive to which RFPs, you cite a case from the S.D. of New York and claim we "haven't provided any authority to the contrary." That isn't true, I provided you a host of cases that support my position. You just disagree. That's fine, you can disagree, but to suggest this issue is well-settled in your favor (or that I'm just making my argument up out of thin air) isn't really fair. You and I both know that different courts have ruled differently on it based on the particular facts of the particular case. But in any event, you've made your position clear and I don't think we are going to reach an agreement on that.

I'm willing to let the latter two issues go for the time being, if we can figure something out on the informed consent piece. Your email takes the position that "the informed consent forms are identifiable on their face." That isn't completely true – as was established with Mayo_Leopold_0025057, as the party controlling and producing the documents you've got a lot more information than I do. I can guess which pages are "informed consent forms," and I would probably be right. But the point of discovery is that I shouldn't have to guess.

More importantly, though – and maybe there is where our disconnect is – I didn't ask for "informed consent forms." RFP No. 4 asked for "a copy of any and all documents

you claim evidence an informed consent discussion with Noah Leopold." The RFP explicitly explained that we were trying to figure out "precisely which portions of the medical record you claim document any informed consent discussion that was had with Noah Lepold by any Mayo agent or employee at any time."

Let me give you some context for this request. I have handled these cases for a long time. I have had plenty of experiences where a doctor points to language in the record no one would reasonably have thought contained an informed consent discussion, and said "oh, yeah, I talked about that. That's what I meant here when I said XYZ." I very carefully crafted RFP No. 4 to address that concern, to figure out where all such claims might be, and to use that information to prepare for depositions.

I think this is a perfectly reasonable request. And I think you will agree that if I send an interrogatory saying "identify each page of Mr. Leopold's medical records that you claim evidence an informed consent discussion with Noah Leopold," you would need to provide the information. So why not just produce it now?

With my clarifying that our request is more than just "informed consent forms," and given that this appears to be the only issue we need to resolve to avoid a discovery conference with Judge Schultz, I'm hoping you will reconsider your position on this single issue and provide the requested information.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

On Jul 29, 2024, at 4:47 PM, Ebnet.Nathan@dorsey.com wrote:

Brandon,

It appears we agree that the only discovery issue we need to resolve to obviate the
need for a discovery conference with Magistrate Judge Schultz is the informed consent
piece. Accordingly, and without waiving any of Mayo's positions regarding informed
consent, below is our attempt at a reasonable compromise. We believe this additional
information should resolve any concerns you may have as the parties continue to
prepare for the August depositions. Please confirm by Wednesday, July 31, that there is
no need to proceed with the August 6 discovery conference and we will notify
chambers of the same.

Plaintiff has demanded that Mayo identify "any and all documents [Mayo] claim[s]
evidence an informed consent discussion with Noah Leopold." Consistent with
Minnesota law, it is Mayo's position that the evidence relevant to informed consent in
this case includes the totality of discussions between Mayo providers and Mr. Leopold
regarding his health, prognosis, treatment strategies, and transplant options /
attendant risks. *See, e.g., Linegar v. Lobanoff*, 2012 U.S. Dist. LEXIS 204845, at *5-7 (D.
Minn. Feb. 10, 2012) (recognizing that informed consent depends on the record as a
whole, including the consent forms signed by the patient and the patient's discussions
with medical providers). Any discussion set forth in the medical record on these topics
is potentially relevant to informed consent. Moreover, we do not yet know the specific
factual bases for Plaintiff's informed consent theory. Indeed, we've sent you
interrogatories (Nos. 13 – 16) that seek clarity regarding the factual bases for Plaintiff's
Negligent Nondisclosure and Medical Battery claims, and we have not yet received
responses. And in all events, we expect the informed consent issue to be impacted by
ongoing discovery and the opinions of each side's experts.

For all these reasons, it is impossible (especially at this stage of the litigation) to identify
every page within the medical record that may bear on Plaintiff's not-yet-defined
informed consent theory. This is particularly true given Mr. Leopold's extensive
treatment at Mayo; as you know, he treated at Mayo for approximately nine years
prior to the August 29 surgery. By producing the medical records to Plaintiff, we have
provided you with the same information we have regarding informed consent, and
we've produced it to you in the same format we have it in. Some of the many notes in
the record refer expressly to "consent" or similar concepts, and you can identify those
as readily as we can from the face of the record. Beyond the medical record we have
produced to you, we are not aware of any other informed consent documentation. And
we are further not aware of any document or database that separately identifies
informed consent issues within the medical record. In other words, there is nothing
more for Mayo to produce and we've satisfied our obligations under Rule 34.

Ex. CC to Declaration of Brandon Thompson                                          71

With all of that said, we have undertaken the effort to identify the consent forms within the medical record that confirm Mr. Leopold's (or his representatives') consent to various procedures performed by Mayo. We are providing you the Bates numbers for the 26 forms we identified in an attempt to resolve the parties' discovery dispute:

1. Mayo_Leopold_0016261
2. Mayo_Leopold_0016262
3. Mayo_Leopold_0016264
4. Mayo_Leopold_0016267
5. Mayo_Leopold_0016268
6. Mayo_Leopold_0016271
7. Mayo_Leopold_0016273
8. Mayo_Leopold_0016274
9. Mayo_Leopold_0016276
10. Mayo_Leopold_0016280
11. Mayo_Leopold_0016282
12. Mayo_Leopold_0017225
13. Mayo_Leopold_0019220
14. Mayo_Leopold_0020071
15. Mayo_Leopold_0020738
16. Mayo_Leopold_0020739
17. Mayo_Leopold_0020926
18. Mayo_Leopold_0021053
19. Mayo_Leopold_0021130
20. Mayo_Leopold_0021140
21. Mayo_Leopold_0021153
22. Mayo_Leopold_0021459
23. Mayo_Leopold_0021478
24. Mayo_Leopold_0021519
25. Mayo_Leopold_0021524
26. Mayo_Leopold_0021580

As the foregoing discussion should make clear, this list does not and could not exhaustively identify all documents in the record that may be relevant to the issue of informed consent.

To the extent you have specific questions regarding informed consent, you are, of course, free to ask those questions of Mayo's witnesses during depositions.

-Nate Ebnet

DORSEY + WHITNEY LLP
P: 612.492.6753

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Tuesday, July 30, 2024 8:03 AM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>
**Cc:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Audley, Samuel
<Audley.Samuel@dorsey.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>; Marker, Alyssa
<Marker.Alyssa@dorsey.com>; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano
<mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>
**Subject:** Re: Simha v. Mayo - discovery follow-ups

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Nate, thanks for your response. I disagree with a number of the positions you take here, but
we can save those disagreements for another day. I will accept your implicit representation
that you've spoken to the people I'm going to be deposing in two weeks, and that none of
them are going to claim they documented a consent discussion in some place in the
record other than those you've identified below. I appreciate you conducting that
reasonable inquiry.

With that, I agree that our dispute has been resolved. I'm happy to alert the Court that the
conference can be canceled, but if you prefer to do so as you've outlined in your email I've
got no problem with that either. Just let me know.

Best,

Brandon

**From:** Ebnet.Nathan@dorsey.com
**To:** Brandon E. Thompson
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com;
Marker.Alyssa@dorsey.com; Anna C. Messerly; Maggie M. Palmisano; Pamela A. Keenan
**Subject:** RE: Simha v. Mayo - discovery follow-ups
**Date:** Tuesday, July 30, 2024 9:17:10 AM

Brandon,

Understood. I will notify Ms. Bender shortly via email, cc'ing you and your team.

-Nate Ebnet

DORSEY + WHITNEY LLP
P: 612.492.6753

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Monday, August 5, 2024 3:44 PM
**To:** Anna C. Messerly <acm@ciresiconlin.com>
**Cc:** Brandon E. Thompson <BET@ciresiconlin.com>; brantingham.andrew@dorsey.com
**Subject:** RE: Simha v. Mayo - discovery follow-ups

Anna,

It is my understanding that the numbers in the "Initial Sequence" column represent the number of times a particular organ has been declined prior to it being available to the patients listed in Mayo_Leopold_0025057. The Mayo providers that are being deposed next week may have additional detail/insight on this issue.

-**Nate Ebnet**

DORSEY + WHITNEY LLP
P: 612.492.6753

> On Aug 5, 2024, at 3:54 PM, Anna C. Messerly <acm@ciresiconlin.com> wrote:
>
> Great, thanks for getting back to us, Nate. We'll follow-up in depos next week.
>
> **Anna Messerly, DPT**
> *Medical Analyst | Doctor of Physical Therapy*
>
> P:  612.361.8243
> E:  ACM@ciresiconlin.com
>
>  **Ciresi Conlin** LLP
>
> Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402



BE  Brandon E. Thompson
    To   Anna C. Messerly
    Cc   Ebnet.Nathan@dorsey.com; brantingham.andrew@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan

↩ Reply   ↩ Reply All   → Forward   •••
Mon 8/5/2024 11:35 PM

Nate, thank you for providing this additional information.

In reviewing, it strikes me that Noah was listed for a transplant almost continuously from August 16 until his death. There should therefore be similar 'call logs' to Mayo_Leopold_0025057 for each of those days, showing the organs that were made available on each day.

Will you please produce those other call logs? I'd like to have them before we start deposing the witnesses next week.

Thanks,

Brandon

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Wednesday, August 7, 2024 5:48 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com
**Subject:** Simha v. Mayo

Counsel,

Attached and served upon you are Mayo's responses to Plaintiff's first set of interrogatories. With respect to Mayo_Leopold_0025057, we are investigating the issue you raised on Monday evening and will follow-up with you as soon as we are able. Separately, we are preparing a letter regarding Plaintiff's August 1 responses to Mayo's interrogatories and document requests, including Plaintiff's responses to interrogatories 2, 4-5, 7-8, 11, 13-16 and requests for production 6-8. You can expect to hear more from us on those answers soon.

-Nate

**Nathan J. Ebnet**
**Partner**
Pronouns: He/Him/His



Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
**P:** (612) 492-6753
**C:** (320) 266-7464
**CONFIDENTIAL COMMUNICATION**

*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.*

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Thursday, August 8, 2024 2:41 PM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>;
Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Cc:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Audley, Samuel
<Audley.Samuel@dorsey.com>; Marker, Alyssa <Marker.Alyssa@dorsey.com>; Roadfeldt, Christi
<Roadfeldt.Christi@dorsey.com>; Woolhouse, Nicky <woolhouse.nicky@dorsey.com>
**Subject:** RE: Simha v. Mayo

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Nate, I've now had a chance to review Mayo's answer to our single interrogatory. The answer is confusing, and I want to make sure I'm understanding the position Mayo is taking.

I will first point out that your boilerplate objections and your citation of *Hurd* are both unavailing. This Interrogatory was very narrowly tailored to one very specific issue in the case – communications between specifically-identified people about one specific thing.

I would encourage you to compare our narrowly-tailored Interrogatory to, for example, your Interrogatory No. 2; which asks us to list every single person on the planet who claims to have any knowledge whatsoever about the facts of this case and then describe every piece of knowledge that any such person might have. Or perhaps to your Interrogatory No. 7, which asks about all communications not just about one discrete topic, but literally anything related to Noah's medical care in any way, shape, or form. Indeed, your Interrogatory Nos. 2 and 7 are much more like the offending interrogatory in *Hurd*.

Ex. CC to Declaration of Brandon Thompson                                              76

Moving to the merits of your response, you indicate that Drs. Altarabsheh and Knop, and Mr. Pick, "may have discussed characteristics of the August 29 Donor Heart" at various points in time. Despite our request for a complete and detailed description of any such discussions, your answer provides literally no details whatsoever. It doesn't even tell us which "characteristics" "may" have been discussed.

This is very troubling. Despite asking a clear interrogatory, I don't know whether the people I'm deposing in a few days have detailed recollections about their communications regarding the Donor Heart prior to leaving Mayo, during the procurement, and during the transport of the Donor Heart. All I know is they "may" have discussed "characteristics" of the Donor Heart.

This information is of utterly no value to me. I sent Interrogatory No. 1 so I could save time in these depositions, and avoid the tedious process of pinning these witnesses down on exactly what they recall about one of the most important issues in this case. I am in no different a spot now than I was before I sent the interrogatory; all I know is they "may" have had discussions about "characteristics" of the heart.

So my question is this: Do Dr. Altarabsheh, Dr. Knop, or Mr. Pick have anything to say about their communications regarding the August 29 Donor Heart other than "we may have talked about the characteristics of the heart"? I find it incredibly hard to believe that when I ask them questions in deposition that is all they are going to say. And if it isn't, I'm entitled to know what they are going to say.

You go on to say that Dr. Villavicencio "communicated" (the qualifier "may have discussed" is conspicuously absent from this paragraph) with some members of the team while they were at Portneuf, but you again provide virtually no meaningful information. All you say is the communications had to do with "the characteristics of the August 29 Donor Heart" (whatever that means) and the "timing of its transport to Mayo" (but without any information about what was discussed with respect to timing).

So along the same lines as above, what is Dr. Villavicencio going to say he talked with the procurement team about? Is he really going to say "I talked with them about the characteristics of the heart and the timing of the transport," and beyond that he has literally nothing to add? If that is what he's going to say, I guess I'll take it. But I doubt that's what he's going to say. And if he has more to add than the sparse information you've provided, I'm entitled to know what it is.

The next paragraph indicates there were communications about the Donor Heart during the surgery, some of which are documented in the records, some of which are not, but that the Mayo personnel we identified "do not recall specific oral communications beyond what is set forth in Mr. Leopold's medical records." This last

statement – that no one remembers specific communications beyond what is in the medical records – does <u>not</u> appear in the first two paragraphs. Which is part of what leads me to suspect that Villavicencio, Altarabsheh, Knop, and Pick have more to say than what you've disclosed.

I look forward to receiving additional information prior to Monday. If you are really representing that these witnesses have literally nothing to offer on this topic beyond what you've said in this interrogatory answer, I look forward to having that representation confirmed as well.

Thanks,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** brantingham.andrew@dorsey.com <brantingham.andrew@dorsey.com>
**Sent:** Thursday, August 8, 2024 4:48 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Ebnet.Nathan@dorsey.com; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Cc:** Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com
**Subject:** RE: Simha v. Mayo

Brandon,

Mayo stands by its answer to Plaintiff's Interrogatory No. 1. The answer provides a detailed summary of responsive information, based on a reasonable and good-faith investigation. The answer complies with applicable law. And it provides everything a reasonable lawyer should need in order to depose these witnesses by identifying for you the time, place, participants, and subject matter of responsive communications. Courts regularly recognize that a party responding to an interrogatory about oral communications is not obligated to provide the level of granular detail you are demanding. That is what depositions are for. *See, e.g., Kleppinger v. Tex. DOT*, 2013 U.S. Dist. LEXIS 197897, at *12 (S.D. Tex. Jan. 3, 2013).

Your demands on this issue are surprising in light of the positions you have taken in response to Mayo's discovery requests, particularly (but not limited to) Plaintiff's refusal to provide substantive answers to multiple interrogatories. Your attempts to distinguish these are not persuasive. You argue, for example, that Mayo's Interrogatory No. 7 "asks about all communications not just about one discrete topic, but literally anything related to Noah's medical care in any way, shape, or form." But you didn't object to that interrogatory on that basis. You refused to answer it solely on the unrelated (and totally untenable) ground that it supposedly "requests information that is equally under the control of Defendant." You also refused to answer straightforward interrogatories seeking the factual basis for Plaintiff's allegations in the Complaint based on what appears to be a creative theory of how to count subparts of interrogatories. (I note in this connection that while you characterize Plaintiff's Interrogatory No. 1 as "our single interrogatory" below, the principles you appear to have applied to avoid answering Mayo's interrogatories would seem to treat Plaintiff's Interrogatory No. 1 as at least eleven separate interrogatories, and perhaps more.)

As previously indicated, we will send a letter shortly detailing the deficiencies in Plaintiff's discovery responses. In the meantime, because Plaintiff has chosen to withhold potentially significant amounts of discoverable information, Mayo needs written confirmation that Plaintiff has at least complied with her most basic discovery obligations before we proceed with the upcoming depositions. You have repeatedly admonished us about your entitlement to extensive information you feel you need before deposing witnesses. Mayo, too, is entitled to receive appropriate discovery to prepare its case and witnesses. To that end, please confirm no later than tomorrow that you have produced, and are not

withholding on objection or otherwise, any and all documents, recordings, videos, or any other evidence relevant to the allegations in Plaintiff's complaint, specifically including, but not limited to, the allegations addressed in Mayo's interrogatories 13, 14, 15, and 16. Any such evidence is responsive to Mayo's document requests Nos. 3 and 4 at minimum.

If you are unwilling or unable to provide this confirmation, Mayo reserves the right to seek appropriate remedies, which may include continuing the depositions and seeking a protective order, together with a motion to compel.

We look forward to hearing from you.

**Andrew Brantingham**

DORSEY & WHITNEY LLP
P: 612.492.6623

---

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Thursday, August 8, 2024 6:19 PM
**To:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Cc:** Audley, Samuel <Audley.Samuel@dorsey.com>; Marker, Alyssa <Marker.Alyssa@dorsey.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>; Woolhouse, Nicky <woolhouse.nicky@dorsey.com>
**Subject:** RE: Simha v. Mayo

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Andrew, thank you for your quick reply. I disagree with your position, but that's fine. Our positions are now clearly laid out in writing.

With respect to your inquiry about our discovery responses… I'm not sure what you're asking. We have provided a great deal of information in response to Mayo's discovery requests. We objected, properly, to the interrogatories that are beyond the 25-interrogatory limit Mayo proposed and we agreed to. If you disagree with my interpretation of the rules, the

discovery plan, the Court's order, or my calculation of the number of subparts to your interrogatories, I'm happy to discuss. If you want to discuss a stipulation asking Judge Schultz to modify the scheduling order to expand the number of interrogatories, I'm happy to have that conversation as well. Just let me know.

With respect to our responses to RFP 3 and 4, we – as Mayo has done over and over through the course of discovery so far (including in the opening line of the email I'm replying to) – stand by our responses. Not that I need to provide this confirmation (that's what signing the discovery responses is for), but we have produced all information responsive to RFPs 3 and 4 (not to mention the rest of your discovery requests) that is discoverable and not privileged.

We have provided extensive answers to Mayo's interrogatories, and many hundreds of pages of documents in response to Mayo's requests for production. Unlike Mayo, we have clearly articulated precisely which documents respond to which requests, and we have gone out of our way to make clear exactly what it is we are producing. We have even produced some things – like text messages between Noah and Michelle – that are covered by spousal privilege. Given that, I will admit that I am a little bit surprised that you would question whether Ms. Simha "has at least complied with her most basic discovery obligations." Any objective observer who reviews our discovery responses would conclude we have more than met our "most basic discovery obligations." If you disagree, I would be happy to have Judge Schultz compare our responses to Mayo's and decide whether we have failed to meet our most basic discovery obligations. I really don't think that's necessary, but that's up to you.

All of that said, let me try to directly answer one of your questions: yes of course we are withholding some documents based on objections. That's why an objection would be made. For example, I have mountains of documents in my possession that are covered by attorney-client privilege and the work product doctrine. I have no doubt you do as well – in fact, Mayo has indicated on many occasions that it is withholding documents based on its assertion of a variety of different privileges. If you're suggesting that both sides should provide a privilege log of all the documents that are being withheld based on attorney-client and work product privileges, we can discuss that… but obviously Mayo hasn't done that, and I doubt you want to.

I am certain that you, your large and sophisticated team, and the in-house lawyers at Mayo will do an outstanding job of preparing your witnesses

for next week's depositions. I have no clue specifically what information you think you need from me in order to prepare your witnesses to truthfully answer my questions about this case. If there are specific things you are concerned about, again I'm more than happy to discuss them. But I will under no circumstances agree to postpone these upcoming depositions – depositions that required a Herculean effort to schedule, that have been on the calendar for quite some time, and that we have already made extensive arrangements for. If you want to postpone these depositions, you are going to have to get a protective order.

If you would like to have a meet-and-confer to discuss your specific concerns, I can be available this evening and can also make time tomorrow morning. If you are truly considering asking Judge Schultz to grant an emergency protective order postponing the depositions, obviously we would need to have a call with him tomorrow to discuss and he will have expected us to have a meet-and-confer beforehand.

I look forward to hearing your thoughts. You can text me anytime this evening if you want to try to talk things through; my cell is 651-503-4791.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

<image001.png>

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

On Aug 9, 2024, at 10:23 AM, brantingham.andrew@dorsey.com wrote:

Brandon,

Let's proceed with the depositions.

**Andrew Brantingham**

DORSEY & WHITNEY LLP
P: 612.492.6623

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | brantingham.andrew@dorsey.com |
| **Cc:** | Ebnet.Nathan@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com |
| **Subject:** | Re: Simha v. Mayo |
| **Date:** | Friday, August 9, 2024 11:00:02 AM |
| **Attachments:** | image001.png |
| | image002.png |

Sounds like a good plan to me. Let me know if/when you want to discuss your specific discovery concerns.

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Friday, August 9, 2024 5:27 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Maggie M. Palmisano
<mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly
<acm@ciresiconlin.com>
**Cc:** brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com;
Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com
**Subject:** Simha v. Mayo

Brandon,

Attached is a letter regarding Plaintiff's responses to Mayo's discovery requests.

-Nate

**Nathan J. Ebnet**
Partner
Pronouns: He/Him/His



Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
**P:** (612) 492-6753
**C:** (320) 266-7464
**CONFIDENTIAL COMMUNICATION**

*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.*

Ex. CC to Declaration of Brandon Thompson                                                    84

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Saturday, August 10, 2024 12:50 PM
**To:** Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>
**Cc:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Audley, Samuel <Audley.Samuel@dorsey.com>; Marker, Alyssa <Marker.Alyssa@dorsey.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>; Woolhouse, Nicky <woolhouse.nicky@dorsey.com>
**Subject:** RE: Simha v. Mayo

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Nate, thank you for your letter. There's a lot here to unpack, and as you can imagine my focus is on getting ready for the upcoming depositions. I think it makes sense to sit down and discuss this when we are together next week in Rochester – perhaps in the afternoon on Monday? I doubt Dr. Ternus's deposition will take us anywhere close to the end of the day.

If that works for you, I'll commit to reviewing this in at least enough detail that we can have a meaningful discussion. I think we can work through most if not all of these.

Look forward to hearing your thoughts.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

| From: | Brandon E. Thompson |
| --- | --- |
| To: | Ebnet.Nathan@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Cc: | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com |
| Subject: | RE: Simha v. Mayo |
| Date: | Saturday, August 10, 2024 12:59:00 PM |
| Attachments: | image002.png |
| | image003.png |

Nate, as long as we are talking about discovery… in your latest production there are a number of very important emails that involve Noah. I am perplexed as to why these weren't produced before yesterday. They contain Noah's name specifically, so they certainly should have shown up in whatever searches were being done to produce the first four rounds of documents.

Will you please tell me why these emails were not located and produced previously, and what is being done to ensure that we aren't missing more important evidence like this?

Thanks,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

| | |
|---|---|
| **From:** | Ebnet.Nathan@dorsey.com |
| **To:** | Brandon E. Thompson; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| **Cc:** | brantingham.andrew@dorsey.com; Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com; woolhouse.nicky@dorsey.com |
| **Subject:** | RE: Simha v. Mayo |
| **Date:** | Sunday, August 11, 2024 8:10:49 PM |
| **Attachments:** | image001.png |
| | image002.png |

Thanks Brandon. A discussion this week would be fine. I'll look for times that might fit between or after the depos and propose some options for a Zoom call.

Regarding the emails we produced on Friday, we believe those are anomalies. With that said, we've asked Mayo's discovery folks to run an additional set of search terms across all custodians to confirm that our production is complete. That effort is underway. Once I hear from them, I will update you on this issue.

**-Nate Ebnet**

DORSEY + WHITNEY LLP
**P:** 612.492.6753

| From: | Brandon E. Thompson |
|---|---|
| To: | Ebnet,Nathan@dorsey.com; Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| Cc: | brantingham.andrew@dorsey.com; Audley,Samuel@dorsey.com; Marker,Alyssa@dorsey.com; Roadfeldt,Christi@dorsey.com; woolhouse.nicky@dorsey.com |
| Subject: | RE: Simha v. Mayo |
| Date: | Tuesday, August 20, 2024 12:52:00 PM |
| Attachments: | image002.png |
| | image003.png |

Nate and Andrew, thank you for the time today. As planned, I'm writing to attempt to summarize our discussions and outline next steps. I'll try to respond to the issues in the order presented in your letter.

Interrogatory Subparts

I told you that I disagreed with your analysis on this, but didn't think it made sense to battle over it. More importantly I think we both agreed that, in retrospect, 25 interrogatories per side seems a little light. So I told you that I would respond to Interrogatories 13-16, and suggested that we agree to basically use the 25 interrogatory limit as more of a guide than a strict rule. In other words, both sides would endeavor to respond to relevant and proportional interrogatories with the understanding that if things started to numerically get "out of hand," we would revisit this issue. You indicated you would talk with your client about this suggestion and get back to me.

Interrogatory No. 2

We had a discussion about medical records and how to handle them in an orderly manner in this case; specifically, how to make sure that we are all working off the same uniform, paginated set of records from all providers. We agreed that my office would paginate the records we have received (and continue to receive), and provide them to you. If there are records that we have not yet requested, we will send you an appropriate authorization so Mayo can request them – with the understanding that you will paginate those records and send us a copy so we can all work off the same set.

Interrogatory No. 7

My understanding is that Mayo is comfortable with revising this interrogatory somewhat, to request a general overview of topics of conversations along the lines of what Mayo provided in response to our Interrogatory No. 1. In addition, Mayo has asked that if the family has specific recollections of specific conversations, that be provided as well. I will work with the family to supplement this answer.

Interrogatory No. 8

I'm working with the family to determine where this treatment took place, and whether it is subsumed in records we have already received or requested. If it is not, we will provide appropriate authorizations allowing Mayo to obtain the records – again with the understanding that Mayo will paginate the records and send us a copy so we are all working off the same set.

## Interrogatory No. 11

You provided an explanation for how you believe this interrogatory is relevant. We agreed that I will find out from the family if any such benefits have been applied for, and in the event the answer is yes we will get more information and sort out any remaining objections.

## RFP No. 6

In re-reviewing our response to this, I note that my objection should have been accompanied by an explanation that our production included numerous such documents and communications. This includes text messages produced in our initial disclosures, as well as the pamphlets and other handouts Noah received from Mayo that we produced as Exhibit 10 to our responses. That said, I have reached out to the family one more time to see if there is anything additional.

## RFP No. 7

This goes along with Interrogatory No. 11.

## RFP No. 8

I explained to you that we already conducted a very diligent search for documents responsive to this request. I also noted that some of the communications you are requesting are protected by the spousal privilege. I have followed up with the family to make sure that their own searches were broad enough to capture all discoverable communications, and if there is any further supplement we will provide it.

Please let me know if I've missed anything, or if your recollection of our discussion differs from my summary.

Best,

Brandon

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | brantingham.andrew@dorsey.com; Ebnet.Nathan@dorsey.com; Audley.Samuel@dorsey.com; Roedfeldt.Christi@dorsey.com |
| **Cc:** | Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| **Subject:** | Simha v. Mayo - comprehensive discovery email string (issues raised by Plaintiff) |
| **Date:** | Sunday, September 29, 2024 6:19:00 PM |
| **Attachments:** | image001.png |

Andrew and Nate, I am beginning to lose track of the various email strings we going on discovery issues. So I am going to start one that only pertains to my outstanding discovery-related issues. Please feel free to start another string that relates to any outstanding issues you have, but I think it will be useful for all of us if we try to keep a delineation between them.

Having reviewed Mayo's latest round of discovery production, here is where I think we are. I've taken the liberty of putting "action items" in bold so we can be efficient:

## Outstanding requests for additional depositions

I understand we have Dr. Spencer set for November 13, and Skow, Reynolds, and Osterhaus set for November 15. I will do those via Zoom. I am still waiting to hear from you on Chauhan and Daly, and I am still waiting to get specific dates from you on the other four. When can we get these finalized?

## Reconvened depositions

Dr. Rosenbaum and Dr. Villavicencio made significant and substantive changes to their depositions that I am entitled to follow up on, and I intend to do that. **Please let me know asap whether you will oppose this.**

With respect to Prince and Boilson, you have now produced additional communication that they authored that raise new issues that need to be explored. I am entitled to ask them questions about documents that I didn't have before their depositions, and should have had. **Here again, please let me know asap whether you will oppose this.**

FYI, I have already heard your complaint that the delay in your discovery production was a result of my demanding an "accelerated deposition schedule." I reject that argument completely, and it rings awfully hollow now that it has been more than <u>four months</u> since I served our discovery requests and I'm still getting new responsive documents from you.

In any event, I don't think there is any benefit whatsoever in us quibbling back and forth on this. Let's just try to be straightforward. If you will agree to reconvening

these depositions, let me know. In the interest of compromise I'll even refrain from asking Mayo to bear the costs of me having to re-depose these people. If you are going to oppose it, just let me know that as well. But in the interests of transparency, please know that if you object I will be asking for the costs associated with reconvening the depositions to be borne by Mayo.

## Rule 30(b)(6) deposition regarding document searches

We are now three months from my expert disclosure deadlines, and I am still getting brand-new, highly relevant documents from Mayo on a regular basis. By my count we just got the eighth round of document production. Some of these new documents involve a dramatic shift in prior sworn testimony and prior sworn discovery responses by Mayo.

I have gotten no explanation from you whatsoever as to why these documents were not uncovered previously, and I have gotten no explanation from you as to why I should have any confidence that this isn't going to continue.

As I outlined recently, the only way I can think of to address this issue is to notice a 30(b)(6) deposition on the topic of Mayo's search for documents responsive to our discovery requests. **Please let me know if you will object to this – if so, please provide me with an alternative suggestion for how to deal with this issue.** As I have said previously, I cannot conceive of a logical explanation for why these recent emails authored by Boilson and Prince, for example, didn't show up until the eighth round of document production.

## Special master

As part of trying to comply with our meet-and-confer obligations under LR 7.1, I have asked you a number of questions about your request for a special master. I haven't heard back from you on that. In the interest of complying with the rule and trying to avoid unnecessary motion practice, I hope to hear back from you on that soon.

## The family's depositions

I have tried on numerous occasions to get you to nail down a specific schedule, with location, for the family's depositions. I cannot continue to hold a three-day block of time indefinitely. If you want to get these depositions accomplished in early December, we need to have the schedule finalized by the middle of this upcoming week.

## Mayo's supplementation of discovery responses

As you know, Fed. R. Civ. P. 26(e)(1)(A) requires a party who has made a disclosure or who has propounded a discovery response to "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

There are a raft of discovery responses that Mayo has been provided that need to be corrected based on information that has come to light in this litigation so far. Some of them have to do with these changes to Villavicencio's and Rosenbaum's testimony and the additional disclosure of new documents to "support" those changes, but I'm particularly concerned with Mayo's responses to our requests for admissions, which Nate signed as an officer of the court (and presumably as an authorized representative of Mayo) on July 3.

Request No. 3 asked Mayo to admit that Mayo assured Noah Leopold that he had the "luxury of time" in waiting for a "good heart." Mayo denied that request. Now that you have seen the video of Dr. Ternus's discussion with the family, you know beyond a shadow of a doubt that your response to Request No. 3 is wrong. Mayo has an obligation under the Rules of Civil Procedure – and Nate has an obligation under Minn. R. Prof. Cond. 3.3 and 3.4 – to correct that response now that you know it isn't accurate.

Request No. 4 asked Mayo to admit that Mayo assured Noah that the transplant team wouldn't accept a "marginal heart" for him. Here again, you know to a 100% certainty that that statement is true, and that your denial of RFA No. 4 was inaccurate. This needs to be corrected.

Both of these corrections must be made in a timely manner under the rules. It has already been six weeks since Mayo learned unequivocally that its responses to those two RFAs were inaccurate, and that the answers Nate signed as an officer of the court could no longer be ethically maintained as truth. How long are you planning to wait before you amend your responses to admit the truth of these two indisputably true statements?

## Mayo's Responses to Plaintiff's First Supplemental Discovery Requests

These were served on August 29, which means by my count means they were due

last Friday, September 27. Obviously you have been working on these, because they (apparently) form the basis for Dr. Villavicencio fundamentally changing his testimony regarding the timing of when Noah's heart was explanted. That's a whole different issue, which I'll explore when we reconvene Dr. Villavicencio's deposition. **But I presume I will receive the responses on Monday?**

<u>Mayo's Responses to Plaintiff's Second Supplemental Discovery Requests</u>

I am aware these are not yet due. But complying with the requests certainly shouldn't be difficult, as it only requires Mayo to un-redact information that is already contained in documents that were previously produced. **If you are planning to object to these requests, however, I would appreciate if you would simply let me know so we can address it with Judge Schultz on October 15 when we will already be before him.**

I look forward to hearing from you on all these issues, and hopefully to working most if not all of them out without court intervention.

Best,

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Ebnet.Nathan@dorsey.com <Ebnet.Nathan@dorsey.com>
**Sent:** Monday, September 30, 2024 5:12 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; brantingham.andrew@dorsey.com;
Audley.Samuel@dorsey.com; Marker.Alyssa@dorsey.com; Roadfeldt.Christi@dorsey.com
**Cc:** Maggie M. Palmisano <mmp@ciresiconlin.com>; Pamela A. Keenan <PAK@ciresiconlin.com>;
Anna C. Messerly <acm@ciresiconlin.com>
**Subject:** RE: Simha v. Mayo - comprehensive discovery email string (issues raised by Plaintiff)

Brandon,

My email of Friday afternoon already addresses many of the issues you raise again below. In your
email from today, in which you responded to some, but not all, of Mayo's concerns regarding
Plaintiff's production, you declined to address any of Mayo's proposals for resolving ongoing
discovery disputes, including Mayo's offer for a mutual exchange of search terms. As a result, my
answers below largely restate Mayo's positions that have been communicated to you in earlier
correspondence.

### Additional Depositions of Mayo Witnesses

Nothing has changed on this issue between when I provided my latest scheduling update (Thursday,
Sept. 26 at 5:08 PM) and when you emailed (Sunday, Sept. 29, at 6:20 PM). As I advised you last
week, we have tentative dates for Dr. Spencer, Adam Skow, Alex Reynolds, and Megan Osterhaus.
These dates may require adjustment depending on the availability of the special master. And we
can't begin the process of scheduling with a special master because you no longer agree to the
appointment of one. More on that issue below.

We are still working on potential dates for Dr. Chauhan and Dr. Daly. As soon as we have their
potential availability, we will let you know.

We do not know what you mean by "I am stilling waiting to get specific dates from you on the other
four."

### Re-opening the Depositions of Nathan Prince and Drs. Boilson, Rosenbaum, and Villavicencio

On Friday, I asked you to identify the additional information that has come to light that requires, in your view, further examination of Nathan Prince and Dr. Boilson. Mayo needs this information—i.e., the documents and topics upon which you intend to question witnesses—in order to evaluate whether to oppose your request. You did not respond to this question. And a general reference to "additional communication [sic] that they authored that raise new issues" is insufficient.

With respect to Dr. Rosenbaum, Mayo will agree to provide an amended errata that further clarifies the basis for the correction, in addition to what was provided in Andrew's Sept. 26 email to you.

With respect to Dr. Villavicencio, Mayo will likely agree to re-open his deposition. But we need to establish the boundaries and rules that will apply. Please identify the documents and topics at issue. (We expect this potential agreement will resolve the issues raised in your other email from Sunday.)

**The Parties' Document Productions**

In your Sept. 26 correspondence, you raised the 30(b)(6) issue. I provided Mayo's response in my Friday email. As stated therein, Mayo has significant concerns regarding the completeness of Plaintiff's production. And in light of the concerns you are raising, Mayo has no objection to sharing with you how Mayo conducted its collection, including the search terms that were used, on the condition that you share the same information with us regarding Plaintiff's document collection and production. Please respond to Mayo's proposal.

**Special Master**

After agreeing to appointment of a special master, one of the candidates Mayo proposed, and the proposed stipulation reflecting the parties' agreement, you changed your mind on Thursday, Sept. 26 at 11:16 PM. In your email, you asked: "Please let me know what Mayo believes the grounds are in this case." I responded the next day: "The depositions in August involved numerous objections and frequent disagreements by and between you and Andrew regarding the rules. They also required two emergency conferences with Judge Schultz. Mayo believes appointment of a special master will promote an efficient elicitation of substantive testimony, as should be the goal."

You now claim that you "haven't heard back from [Mayo]" on this issue, but as stated above, that is not the case. We've more than satisfied our LR 7.1 obligations by explaining the basis, in our view, for appointment of a special master. Indeed, the parties initially reached an agreement, we drafted a stipulation to that effect, and you told us to "go ahead and file." You've now changed your position —and that is fine—so Mayo intends to proceed with the motion.

To the extent you offered to review case law if I "wanted to send [you] some," we've already identified the operative rule for you in the draft stipulation we provided: Fed. R. Civ. P. 53. As I trust you know or can quickly ascertain, the courts are clear that contentious depositions between the parties are sufficient reason to appoint a special master under Rule 53—particularly when one party, Mayo, has agreed to bear the expense.

**The Family's Depositions**

We will take Norman Leopold's deposition on Wednesday, December 4, at 9:00 AM Eastern. We will take Karen Leopold's deposition on Thursday, December 5, at 9:00 AM Eastern. We will take Jenna Leopold Shulman's deposition on Thursday, December 5, at 1:00 PM Eastern. We will make arrangements for these depositions to occur in Miami. The precise location is to be determined.

For Corey Shulman, we accommodated your request to defer his deposition to a later date. As I previously communicated to you, we intend to take that deposition in person.

**Supplementing Mayo's Discovery Responses**

Rest assured that Mayo will supplement its discovery responses as appropriate and as required under the rules. I'd call your attention to the comments to the Notes of Advisory Committee on Rule 26(e): "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." In this case, fact discovery does not close until May of next year. Trial is set for December 1, 2025.

Additionally, as the text of Rule 26(e) makes clear, supplementation is only required "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." As you state below, all of the purported corrections you are seeking regarding Plaintiff's requests for admission are already known by Plaintiff (and indeed, were known by Plaintiff (but not Mayo) before she sent her requests).

**Mayo's Responses to Plaintiff's First Supplemental Discovery Requests**

Under the rules, these are due today. Mayo will provide timely responses.

**Mayo's Responses to Plaintiff's Second Supplemental Discovery Requests**

Mayo is still evaluating these requests and will provide its position when responses are due.

-Nate Ebnet

DORSEY + WHITNEY LLP
**P:** 612.492.6753

**From:** Brandon E. Thompson
**Sent:** Wednesday, October 2, 2024 6:53 AM
**To:** brantingham.andrew@dorsey.com; Ebnet.Nathan@dorsey.com; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com
**Subject:** Simha - Mayo's discovery motion

Andrew and Nate, I've now had a chance to review your discovery motion. I think I misunderstood your proposed remedy when we had our meet and confer. To be clear, you aren't asking for the video itself to be excluded, but rather simply asking that the portion of the deposition where I impeached Dr. Ternus not be shown in the future?

I disagree with your interpretation of the applicable rule, and there are a lot of cases where courts endorse my interpretation. As I'm sure you saw in your research, there are numerous courts that specifically endorse delaying disclosure of impeachment evidence until after a deposition. I also think this non disclosure was both substantially justified and harmless. That said, the way I understand your request is that you're essentially asking that I be precluded from showing Dr. Ternus getting impeached. If that's what we're talking about here, I think we can reach an agreement.

Please let me know if you want to discuss further.


Sent from my iPhone

| | |
|---|---|
| **From:** | Brandon E. Thompson |
| **To:** | Ebnet,Nathan@dorsey.com; brantingham.andrew@dorsey.com; Audley,Samuel@dorsey.com; Marker,Alyssa@dorsey.com; Roadfeldt,Christi@dorsey.com |
| **Cc:** | Maggie M. Palmisano; Pamela A. Keenan; Anna C. Messerly |
| **Subject:** | RE: Simha v. Mayo - comprehensive discovery email string (issues raised by Plaintiff) |
| **Date:** | Thursday, October 3, 2024 10:17:00 AM |
| **Attachments:** | image001.png |

## New Mayo depositions

Nate, you complain that "nothing has changed" in between your scheduling updates, then provide (somewhat sarcastically, in my view) the exact date and time of your update and my email. I wasn't suggesting you should have had an additional update. I included this issue because – as I noted both in the subject line and in the body of the email itself – my goal in sending the email was to put together a "comprehensive" listing of all outstanding issues.

As long as we are clocking time, though…

I have been asking for a deposition date for Dr. Chauhan since the beginning of May. To be precise, since our Rule 26 conference on May 2. That's 155 days. How much time do you think it should take to get a deposition scheduled? How long do you think is appropriate before I follow up again?

I would have asked for deposition dates for Osterhaus, Skow, and Reynolds in May as well if you had properly identified them in your initial disclosures as people with relevant information about this case. Since you didn't identify them, I first found out about them when you produced a surprise set of text messages on July 13 – almost a month after your discovery responses were actually due. I've been asking for dates for their depositions since then. I won't count the days, and just leave it at 2.5 months-plus.

I have been asking for dates for Spencer and Daly since August 30. More than a month.

You have gotten me dates for Spencer, Osterhaus, Skow and Reynolds but have refused to give me times so we can serve notices. You have not given me dates for Chauhan or Daly, and refused to even give me an idea for when you expect to actually get a response to me.

I would like to get these dates and times nailed down, and the depositions noticed. If a special master gets appointed, and if that special master has a scheduling conflict, we can deal with that. But these need to be scheduled immediately.

<u>Re-convening depositions</u>

I am not aware of any rule or case that requires me to give you an outline of the questions I intend to ask in depositions. You produced, months after the due date for production and well after the depositions, critically relevant documents that I would have asked the Mayo witnesses about if they had been timely produced. These include Mayo_Leopold_0025244-0025289. I reserve the right to ask the witnesses any questions that pertain to any of those late-disclosed documents, as well as any other new documents you produce prior to the reconvened depositions.

In addition, Dr. Rosenbaum and Dr. Villavicencio made significant substantive changes to their deposition testimony. I am entitled to explore these new answers, and intend to do so.

So to be clear, I want to reconvene the depositions of Prince, Boilson, Villavicencio, and Rosenbaum. I'm no longer interested in having an affidavit from Dr. Rosenbaum, because given what continues to transpire in discovery I have no confidence that an affidavit will be sufficient.

The scope of the reconvened depositions will include (1) any substantive changes made to earlier sworn testimony; (2) any documents Mayo produced after the depositions were taken; and (3) any questions that are reasonably connected to those topics.

Please let me know your thoughts on this asap so we can either get these reconvened depositions scheduled or we can take it up with Judge Schultz.


<u>30(b)(6) deposition</u>

I have considered Mayo's proposal to share information about how its searches for documents was conducted. I don't think that is a workable solution at this point. Inevitably, what will happen is that you will provide an explanation. I will have follow up questions. We will argue over whether my questions are relevant. You will probably then provide some more information. I will find it insufficient, and ask more questions. And we will be in that circle of misery for another two months. I don't think that is a good use of anyones' time. I would prefer to simply have Mayo designate a witness or witnesses to answer my questions in a deposition. Then we can get it all done in one fell swoop. You are free to ask the Leopold family – as I'm sure you will anyway – about how they went about collecting the information that we produced.

Please let me know if Mayo will object to a 30(b)(6) deposition along these lines so I

can either notice the deposition or we can take this issue up with Judge Schultz as well.

## Special master

I was astonished that you filed a motion on this, including a sworn meet-and-confer statement, when I had specifically told you I was more than willing to continue to discuss the issue and see if we could work it out. I think that was a violation of both the letter and spirit of LR 7.1, which is designed to allow (and encourage) parties to exhaust their own attempts to resolve disputes before bringing motions. But since you filed the motion, I will respond to it.

## Family depositions

I have reached out to the family to confirm those dates and times will still work for them, given the lengthy delay in your getting around to scheduling. I notice you left Michelle off the list. Are you no longer planning to depose Noah's wife?

## Supplementation

I will keep in mind your position that new information need not be provided as the information is learned, but rather that a party can simply hold back relevant newly-discovered information indefinitely. I find that position to be absolutely extraordinary given what has transpired in this case so far.

With respect to your citation to the text of 26(e), you are absolutely missing the point. You don't have to tell me about Ternus's statements, because I already know about them. But you do have to amend your requests for admissions, because you know they are wrong. Mayo has an obligation to do that under the Rules of Civil Procedure, and Nate also have to do that under the Rules of Professional Conduct. You have know for almost two months that your sworn discovery answers are materially wrong. The fact that you haven't already amended them is surprising. The fact that you apparently are now insisting you never have to amend them is mind-boggling.

I look forward to hearing from you on these issues soon.


**Brandon Thompson**

*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com

 **Ciresi Conlin** LLP

Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Thursday, October 3, 2024 10:19 AM
**To:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Audley, Samuel <Audley.Samuel@dorsey.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>
**Subject:** RE: Simha - Mayo's discovery motion

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

I'm writing to make sure this email doesn't get lost in the flurry of filings and other communications on this case. This is yet another attempt by me, pursuant to LR 7.1, to resolve issues without court intervention.

I look forward to your thoughts.

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



Ciresi Conlin LLP | 225 S. 6th St. | Suite 4600 | Minneapolis, MN 55402

**From:** brantingham.andrew@dorsey.com <brantingham.andrew@dorsey.com>
**Sent:** Thursday, October 3, 2024 5:54 PM
**To:** Brandon E. Thompson <BET@ciresiconlin.com>; Ebnet.Nathan@dorsey.com; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com
**Subject:** RE: Simha - Mayo's discovery motion

Brandon,

Our correspondence prior to filing Mayo's motion was perfectly clear about the relief Mayo intended to seek. Your response, via email on September 26, was to call the anticipated motion "utterly frivolous," state unequivocally that Plaintiff "will not agree [to] any limitations on the future use of Dr. Ternus' deposition," and confirm that "we've met our meet and confer obligation." None of that squares very well with your claim below to be making "yet another attempt, pursuant to LR 7.1, to resolve issues without court intervention."

Based on your express positions, Mayo already incurred the effort and expense to prepare and file its motion. Like our prior correspondence, the motion papers are perfectly clear about the relief Mayo is seeking. Your email below does not acknowledge that reality. If your email is intended to convey a compromise proposal, it is not satisfactory. Mayo intends to proceed with the motion.

**Andrew Brantingham**

DORSEY & WHITNEY LLP
P: 612.492.6623

**From:** Brandon E. Thompson <BET@ciresiconlin.com>
**Sent:** Thursday, October 3, 2024 6:39 PM
**To:** Brantingham, Andrew <brantingham.andrew@dorsey.com>; Ebnet, Nathan <Ebnet.Nathan@dorsey.com>; Pamela A. Keenan <PAK@ciresiconlin.com>; Anna C. Messerly <acm@ciresiconlin.com>; Maggie M. Palmisano <mmp@ciresiconlin.com>; Audley, Samuel <Audley.Samuel@dorsey.com>; Roadfeldt, Christi <Roadfeldt.Christi@dorsey.com>
**Subject:** RE: Simha - Mayo's discovery motion

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Andrew, with respect your position was not (and still isn't) "perfectly clear."

In response to my question about what relief Mayo was going to seek, Nate indicated (on September 26) that "Mayo intends to seek monetary relief in addition to exclusion of Dr. Ternus's deposition testimony from any further use in this case."

Dr. Ternus's deposition is seventy-five pages long. The vast majority of it contains testimony that has nothing to do with anything related to the video that is the subject of Mayo's motion. I believed – and continued to believe – that a motion asking for Ternus's entire deposition to be "excluded from any further use in this case" as Nate outlined would be utterly frivolous.

Contrary to that far-reaching relief, Mayo's brief – at least as far as I can tell – appears to only be taking issue with the portion of Dr. Ternus's deposition that contains the video impeachment. Mayo's motion contains the same broad language as Nate's September 26 email, but the gist of the argument in your brief seems much more limited. That's why I reached out on Tuesday morning – because it is not "perfectly clear" what you're seeking, but if my read of your brief is correct then we can probably reach an agreement.

Rule 7.1(a)(2) of course contemplates that parties will continue to consider their positions to see if compromise can be reached. Which is exactly what I was doing on Tuesday morning, and trying to do here. I admitted that I may have been mistaken about the relief you were seeking when we had our meet-and-confer (as a direct result of the broad statement Nate made when I asked for specificity on the relief being sought), and so I tried to sort it out in an attempt to resolve the dispute. Again.

I'm really puzzled by why you wouldn't provide a straightforward answer to my straightforward question. So there is no confusion, here it is again:

**Is Mayo really seeking to prevent the use of every word in Dr. Ternus's entire seventy-five page deposition from this point forward, as Nate indicated on September 26? Or is Mayo's request limited to preventing the use of the narrow part of Dr. Ternus's deposition where he was impeached by the playing of the video, as your brief seems to indicate?**

Those are two very different requests for relief. And if your request is "perfectly clear," as you claim, it would certainly seem to be an easy thing for you to just tell me what you're asking for. Not only would that be the logical thing to do, it's what is involved in making good faith efforts to resolve disputes without taking up the Court's time with unnecessary motions.

I recognize that you and your client are frustrated by the way discovery has gone in this case so far. Trust me, I share your frustration wholeheartedly. But our mutual frustration doesn't eliminate our obligation to try to work through disagreements. In fact, it makes it even more important that we do so.

I look forward to receiving clarity on the relief you are seeking so we can determine whether the issue can be resolved without court intervention.

Brandon

**Brandon Thompson**
*Partner*

P: 612-361-8209
C: 651-503-4791
E: BET@ciresiconlin.com



| | |
|---|---|
| **From:** | brantingham.andrew@dorsey.com |
| **To:** | Brandon E. Thompson; Ebnet.Nathan@dorsey.com; Pamela A. Keenan; Anna C. Messerly; Maggie M. Palmisano; Audley.Samuel@dorsey.com; Roadfeldt.Christi@dorsey.com |
| **Subject:** | RE: Simha - Mayo's discovery motion |
| **Date:** | Friday, October 4, 2024 3:05:04 PM |
| **Attachments:** | image001.png |

Brandon,

As indicated in Mayo's brief and proposed order, Mayo is seeking an order precluding any further use of Dr. Ternus's deposition in its entirety, as well as monetary sanctions.

**Andrew Brantingham**

DORSEY & WHITNEY LLP
P: 612.492.6623

Ex. CC to Declaration of Brandon Thompson                                                    106